NATE SUGAR

*v.*

JOHN FROEHLICH.

*Opinion filed October 23, 1907.*

1. SPECIFIC PERFORMANCE—*specific performance depends largely upon facts of each case.* Every case of specific performance depends largely upon its own special facts, and the inquiry must be whether in equity and good conscience the contract shall be enforced, and the decision of such question involves the hearing of evidence of extrinsic facts.

2. SAME—*specific performance is not a matter of right.* Even though a contract is clear, certain and unambiguous and proven with a reasonable degree of certainty, specific performance will not

necessarily be decreed but will rest in the sound discretion of the chancellor, in view of the facts and circumstances of the case.

3. CLOUD ON TITLE—*a contract of sale recorded by third party without authority may be canceled as a cloud.* A contract for the sale of land placed in the hands of a third person to be held in escrow should not be placed upon record without the consent of the parties, and if it is so recorded a court of equity may set it aside as a cloud upon title.

APPEAL from the Circuit Court of Cook county; the Hon. THOMAS G. WINDES, Judge, presiding.

February 3, 1903, appellee filed a bill in the circuit court of Cook county seeking the annulment and cancellation of a certain contract as a cloud upon his title to certain real estate. The contract provides that Nate Sugar agrees to purchase, at the price of $12,500, lot 34, in block 3, Bauwan & Hoffman's subdivision, Chicago, "and John Froehlich agrees to sell said premises at said price, and to convey to said purchaser a good and merchantable title thereto by general warranty deed, but subject to (1) *existing leases, expiring May first,* the purchaser to be entitled to the rents from the delivery of the deed; (2) all taxes and assessments levied after the year 1901; (3) any unpaid special taxes or assessments levied for improvements not yet made. * * * Said purchaser has paid one hundred ($100) dollars as earnest money, to be applied on such purchase when consummated, and agrees to pay, within five days after the title has been examined and found good or accepted by him, the further sum of twelve thousand four hundred ($12,400) dollars at the office of Haberer & Snow Company, Chicago, provided a good and sufficient general warranty deed conveying to said purchaser a good and merchantable title to said premises (subject as aforesaid) shall then be ready for delivery. * * * *This contract is made subject to lot thirty-five (35) being sold and closed with the delivery of this deed."* (The italics are ours.) Then follow provisions that a merchantable abstract shall be furnished; that it shall

be examined and defects cured within sixty days unless the purchaser elects to take title as it is and gives ten days' notice of such election at the expiration of said sixty days, and in default of such notice the contract to become null and void; that should the purchaser fail to perform promptly, the earnest money, at the option of the vendor, is to be forfeited as liquidated damages; that all notices must be given in writing, and that time is of the essence of the contract; that the said deed and earnest money should be held by Haberer & Snow Company for the mutual benefit of the parties, and in case of forfeiture the earnest money should be applied in payment of expenses and commissions, rendering overplus to vendor. The contract was dated June 19, 1902, and was signed by both parties.

Appellee charges that July 8, 1902, said written agreement was filed for record by Haberer & Snow Company or by appellant, without appellee's consent; that the sale of said lot 35 was made a condition precedent to the sale of lot 34, and that although reasonable time had elapsed for the sale of said lot 35 and reasonable efforts had been made to sell the same it had not been sold, and that therefore appellee had elected to terminate the agreement, and so notified appellant and requested him to release the contract of record, but that appellant refused so to do, and that thereupon the appellee notified Haberer & Snow Company and appellant that he had elected to declare the contract terminated, and requested said firm to refund to Sugar his earnest money.

Appellant, besides answering, filed a cross-bill, in which he set up said written agreement and charged that appellee had never, since the execution of said agreement, made any effort to sell said lot 35, and that appellee, before a reasonable time had elapsed, had repeatedly refused to accept a reasonable sum of money for said lot 35, notwithstanding it was offered by responsible parties who were willing to carry out their said offer as to lot 35; that thereby appellee

had waived and surrendered whatever rights, if any, he had under the clause, "subject to lot 35 being sold and closed with the delivery of this deed;" that said appellee had never furnished a merchantable abstract of title of said lot 34, as provided in the contract, or at any time executed or tendered a warranty deed; that appellant has at all times been willing, able and ready to comply with all the terms and conditions of the agreement and to pay the balance of the money due. The prayer of the cross-bill is that appellee be decreed specifically to perform said agreement and make and deliver to appellant a general warranty deed of the premises.

On the issues being joined, evidence was heard by the chancellor, and on March 12, 1907, a decree entered finding, among other things, that appellee was the owner of said premises and that the agreement had been entered into as set forth therein; that at the time it was entered into there was a five-year lease on lot 34, but that said lease was under the control of Froehlich, and that he was ready and willing, up to November 13, 1902, to execute the conditions of said contract on his part, but that during said time no buyer was produced by Haberer & Snow Company for said lot 35, and that on said November 13 appellee by written notice canceled and terminated the contract; that between the date of the contract and said November 13, 1902, was a reasonable time for the performance of the terms and conditions of the said contract; that the contract should not have been filed for record without authority of appellee. The court thereupon decreed that said contract "be and the same is hereby set aside and declared null and void as against the complainant, John Froehlich, his heirs and assigns, as a cloud on the title of said complainant," and "that the cross-bill of the defendant be and the same is hereby dismissed for want of equity." Exceptions were taken to this decree and appeal taken to this court.

KICKHAM SCANLAN, for appellant.

OSSIAN CAMERON, for appellee.

Mr. JUSTICE CARTER delivered the opinion of the court:

The evidence shows that lot 34, and lot 35 immediately adjoining it, on the date of the contract and for a long time prior thereto, were owned by appellee; that a frame building was on lot 34; that lot 35 was improved with a three-story brick building. Some time in the early part of 1902, appellee and his wife being in poor health, he was desirous of leaving Chicago for California for the winter and decided to sell these properties. George Haberer, who was in the real estate business, asked the privilege of selling them. Appellee testifies that previous to this he had been offered $14,000 for lot 34, but did not want to sell that property alone, and he authorized Mr. Haberer to sell the two pieces together for $30,000. After trying for some time to sell the two properties together, and being unsuccessful, in the early part of June, 1902, appellee authorized the sale of the lots separately, lot 34 for $12,500 and lot 35 for $18,500. The evidence tends to show that during all these negotiations appellee understood that the sale of both of these properties was to be closed up at the same time. Haberer made an agreement with appellant as to lot 34, and the contract was thereupon drawn up and presented to appellee. The provision as to the sale of lot 35 was not in the contract when first drafted but was inserted at appellee's suggestion. The contract had been previously signed by appellant, but he consented to the change. The weight of the evidence is to the effect that appellee understood from Haberer at this time that lot 35 was already practically sold to one Misch, and that a contract would be entered into for that lot very soon thereafter. It also tends to show that appellant knew of this talk of negotiating a sale of the other property to Misch. At the time the contract was being drawn up there was a discussion between appellee and Haberer as to a lease on said lot 34 in favor of appellee's son-in-law. The evi-

dence does not show clearly that appellant or Haberer then understood the length of time this lease still had to run. It is clear that appellee agreed if both properties were sold in accordance with their then understanding that he would take care of the lease. It will be noted that the contract states that the lease expires May 1, without giving the year. It turned out after this contract was signed that Misch did not want lot 35, and although Haberer made efforts to sell the property he did not succeed in finding a buyer. Appellant testified that in the latter part of July or the early part of August, 1902, he first saw appellee after the contract was signed, and he was then told that there was a three years' lease and that the contract was made subject to the sale of both properties; that appellee thought it was a bad bargain and wanted to cancel the contract; that after some talk appellee said he could have the property on condition that he let appellee's son-in-law occupy lot 34 three years after the coming May at $55 a month; that he told appellee it was a "hold-up" and he would not stand for it; that "rather than be held up that way" he would take the adjoining lot for $18,500, but that appellee would not agree to it.

Appellee denies that appellant ever offered to take lot 35 at $18,500 or at any price, during this or any talk he had with him, but claims that he, (appellee,) during more than one of these conversations, told appellant that the understanding always was that the two properties were to be sold together and that Haberer had no right to sell one property alone; that this contract as to lot 34 was a "scheme" contract; that appellant told him that the contract was good for ten years, and he replied, "no," that was not the understanding. Appellee states that in order to settle the matter and avoid the worry to himself and his wife, and at her request, he did offer to close up the trade if appellant would take lot 34 alone, subject to the lease of his son-in-law at $55 a month rental. They had several talks about the matter,—appellant thinks four,—one of them being at Haber-

er's office in his presence and that of the two lawyers, but the testimony as to what was said at these various conversations does not vary materially from what has already been stated.

It is contended by appellant that the lease to the son-in-law, which was produced at the trial, was entered into after the contract was signed and was a scheme on the part of appellee to prevent the carrying out of the contract. The chancellor, who saw the witnesses and heard their testimony, was of the opinion that the lease was not a fraudulent one. We think the weight of the evidence upholds the chancellor's finding in this regard.

Appellant and appellee had been friends for years before this contract was entered into. The evidence tends to show that they had an honest disagreement as to its meaning and execution. Their testimony as to their various conferences shows clearly that both of them during these conversations were often very angry and talked very warmly. It is not at all strange that their stories do not agree as to what was said at such times.

A specific performance of contract will only be enforced where the terms are clear, certain and unambiguous, either admitted by the pleadings or proven with a reasonable degree of certainty by the evidence. Even in cases where all of these requirements are present, specific performance is not a matter of right but rests in the sound discretion of the court, to be determined from all the facts and circumstances of the particular case. (*Dreiske* v. *Eisendrath Co.* 214 Ill. 199; 3 Pomeroy's Eq. Jur.—3d ed.—sec. 1405.) Specific performance is an equitable remedy, which compels such substantial performance of the contract as will do justice between the parties. Inflexible rules cannot be laid down for the exercise of the power of a court of equity in granting specific performance. (*Evans* v. *Gerry,* 174 Ill. 595.) Every case of specific performance necessarily depends in a large degree upon its own special circumstances.

(*Cohn* v. *Mitchell,* 115 Ill. 124.) In such proceedings the inquiry must be whether in equity and good conscience the court should specifically enforce the contract, and the decision involves the hearing of evidence of extrinsic facts. It is never decreed as a matter of course, even when a legal contract is shown to exist. *Espert* v. *Wilson,* 190 Ill. 629.

We cannot say from this record that the evidence is clear that the appellant ever made a positive offer for lot 35 of $18,500, or of any other sum. Appellant in his cross-bill does not offer to take lot 35 and only asks specific performance as to lot 34. It is very clear from the contract itself and from the testimony in this record that appellee never intended to sell lot 34 unless lot 35 was sold at the same time. Appellant must have understood this when he signed the contract in question. There was no proof offered tending to show that any person other than appellant ever made an offer for lot 35. From all the proof in this case, taken in connection with the contract, we think the chancellor decided correctly that a court of equity ought not to require its enforcement.

In case a contract for the sale of land is placed in the hands of third persons to be held in escrow it should not be placed of record without agreement of the parties, and if it is recorded a court of chancery can set it aside as a cloud upon the title of the owner. *Sea* v. *Morehouse,* 79 Ill. 216; *Lane* v. *Lesser,* 135 id. 567; *Larmon* v. *Jordan,* 56 id. 204.

The circuit court properly sustained the demurrer to the cross-bill and declared said contract null and void as a cloud on the title of appellee, and its decree will be affirmed.

*Decree affirmed.*