FRED WOLF, Appellant, v. URBAN E. LODGE, MRS. URBAN E. LODGE, his wife, LYDE BALL and TAMAR BALL, Appellees.

**Specific performance:** OPTION OF LESSEE TO PURCHASE. Ordinarily a
1 contract to be specifically enforced must be mutual, but this rule does not apply where the agreement to convey at the option of a lessee forms a part of the lease and enters into the consideration.

**Same:** OPTION TO PURCHASE: UNCERTAINTY OF TERMS: ENFORCEMENT.
2 The provision in a lease giving the lessee the option to purchase the premises, which does not fix the price or provide a method for ascertaining the same, is too uncertain to be specifically enforceable. Thus the provision that whenever the lessor "shall offer the above described land for sale" the lessee should have the first opportunity to buy was unenforceable because failing to state or provide any method of ascertaining the price.

*Appeal from Muscatine District Court.*—HONS. WM. THEOPHILUS and L. J. HORAN, Judges.

MONDAY, MARCH 17, 1913.

A DEMURRER to the petition was sustained, and as plaintiff elected to stand on the ruling, the action was dismissed. The plaintiff appeals.—*Affirmed.*

*Jayne & Hoffman,* for appellant.

*E. C. Nichols,* for appellees.

LADD, J.—In September, 1895, the plaintiff leased of W. A. Hunter about fifteen acres of land "from January 1, 1896, until it is sold at a rent of $5 per year paying in hauling five cords of wood from said pasture to West Liberty each year." The lease was in writing, and, after providing that rent unpaid should become a lien on property kept thereon and for forfeiture, it was declared "not transferable" and contained this clause: "Said lessor agrees, whenever he shall offer the above-described land for sale, he will give said lessee the first opportunity to buy the same." The petition alleged the execution of this lease; that Hunter subsequently departed this life, devising the land to his wife, Lizzie; that she died leaving the same by will to defendants Lyde and Tamar Ball; that plaintiff had been in possession of the premises continually since the date of the lease, had paid the rent stipulated, but that about February 6, 1911, Lyde and Tamar Ball sold and conveyed the land to one Lodge, who had taken possession and was cutting timber therefrom, and claimed to own the same; that these parties were informed of the provisions of said lease, and charged with notice thereof by plaintiff's possession; and that plaintiff was "still entitled to purchase the land at the price for which said land was sold to said Urban E. Lodge, because of the failure of said defendants Lyde and Tamar Ball to give him an opportunity to exercise his option to purchase said land," and prayed for specific performance. The defendants

separately demurred on the ground that the facts stated did
not entitle the plaintiff to the relief demanded. The de-
murrers were sustained, and of this ruling complaint is made.

Ordinarily a contract, to be specifically enforceable, must
be mutual. *Olive v. Dougherty,* 3 G. Greene, 371; *Hopgood
v. McCausland,* 120 Iowa, 218. But there are
well-recognized exceptions to this rule, among
which is where the agreement to convey at the
option of the lessee forms a part of a lease and enters into
its consideration. *Butler v. Threlkeld,* 117 Iowa, 116. This is
on the theory, as explained in *Hawralty v. Warren,* 18 N. J.
Eq. 124 (90 Am. Dec. 613), that: "In taking a lease,. a tenant
may be willing to pay a high rent for a number of years, pro-
vided the landlord will give him an optional right to purchase
at a fixed price; and it is not to be presumed that the landlord
would agree to such a concession unless he had a consideration
in the lease. And sufficient consideration would make such a
unilateral contract binding in equity." *Willard v. Tayloe,*
8 Wall. 557, (19 L. Ed. 501); *Hall v. Center,* 40 Cal. 63;
*Maughlin v. Perry,* 35 Md. 352; *Hayes v. O'Brien,* 149 Ill. 403,
(37 N. E. 73, 23 L. R. A. 555); 21 Am. & Eng. Ency. of Law
(2d Ed.) 355.

1. SPECIFIC PER-FORMANCE: op-tion of lessee to purchase.

It will be observed, however, that the lease does not fix
or specify the price at which the lessee .might buy; and the
issue in controversy is whether a method of
ascertaining this is provided. That this is essen-
tial where the price is not named does not seem
to be questioned. Mr. Pomeroy, in his work on
Specific Performance, section 148, after saying that the price
is a material term, proceeds: "It must either be fixed by the
agreement itself, or means must therein be provided for as-
certaining it with certainty. In the absence of such pro-
vision, either stating it or furnishing a mode for fixing it,
the agreement would be plainly incomplete, and could not
be enforced; and, if the contract is written, this. term must
appear in the memorandum or written instrument." In other

2. SAME: option to purchase: uncertainty of terms: en-forcement.

words, if the agreement of the parties is incomplete, the court cannot put itself in their stead and make a contract for them. As the clause in question does not relegate fixing the price to a third party in order to sustain appellant's contention, it must be construed to indicate a method by which the parties themselves shall ascertain this. Counsel's theory seems to be that the parties, in agreeing that "whenever the (lessor) shall offer the above-described land for sale, he shall give said lessee the first opportunity to buy the same," contemplated that such offer should specify the price he would accept or a reasonable or fair price, and therefore that, when the lessor desired to terminate the lease, it was incumbent on him to offer the land for sale to the tenant at some price to be fixed by himself or to be ascertained at a fair valuation. Nothing in the instrument indicates a purpose of the parties to limit the price to the fair or reasonable value of the land. The lessor in no manner limited his right to retain the property indefinitely, and, as we think, did not intimate at what price, whether reasonable or otherwise, he would sell. Nor did he undertake that he ever would offer to sell. He merely stipulated that, whenever he should offer the land for sale, he would afford the lessee the first opportunity to buy. But he did not undertake to name a price in putting it on the market, nor did he agree that opportunity to buy should be at a specified sum or one in some manner to be ascertained. The case is like *Fogg v. Price*, 145 Mass. 513 (14 N. E. 741), where the covenant was that, "if the premises are for sale at any time, the lessee shall have the refusal of them"; and the court said: "This is simply an agreement to give the lessee the first chance to make a contract an agreement to sell, if the parties can agree, but not otherwise. It neither fixes the price nor provides any way in which it can be fixed. Suppose that the premises had been advertised for sale, and that the tenant had brought his bill at once, it is plain that the court could not have named any sum at which the lessor should be compelled to sell. Considered, there-

fore, in the light of a contract to sell, as it is treated by the bill, it does not satisfy the statute of frauds, and, apart from the statute, does not suggest a contract such as equity can specifically enforce.''

In *Folsom v. Harr*, 218 Ill. 369 (75 N. E. 987, 109 Am. St. Rep. 297), the. lease contained the covenant that ''Should such party of the first part conclude to sell this property, then said party is to have first chance to buy the same;'' and the court held that the contract was uncertain in that it stated no price for which the land would have sold, and no method for the determination of such price, cited *Fogg v. Price, supra,* and proceeded to distinguish the contract from that considered in *Hayes v. O'Brien,* 149 Ill. 403 (37 N. E. 73, 23 L. R. A. 555). In that case the clause in the lease provided that, ''Said party of the first part hereby reserves the right or privelege of selling that portion of said land at any time from and after this day; but no such sale of said land shall be made by said first party without first having given said second party the privilege of purchasing said land upon such premises and at the same price per acre as any other person or purchaser might have offered therefor.'' And the court, in holding this sufficiently definite, said:

This language is plain and unambiguous, and admits of no construction other than that the terms and price per acre at which the lessee might purchase was the same as offered by any other person or purchaser, and which the lessor was willing to accept. It is true, as said by counsel, the lessor was not bound to sell at all, nor was he bound to take any price offered. But he covenanted that before he would sell to any other person than the lessee, at any price, the lessee might exercise his option to take the land at the price offered; that is, the lessee might purchase upon the terms and at the price the lessor was offered by another, which he decided to accept. As already seen, the fact that, by the contract, the lessor was not bound to sell would not render the contract invalid. By the contract of the parties, the lessee had acquired an estate for years in the land; and as parcel of the transaction, and entering into its consideration for

the execution and acceptance of the contract, he acquired the right to purchase the leased premises, if his landlord determined to sell. It may well be that the landlord was then unwilling to sell at any price, and that the tenant was willing to accept a lease under him, but wholly unwilling to accept a lease for a term of years, and run the hazard of a sale to one whose interests might be inimical to his own. . . . It is clear the lessor was not bound to sell, but having determined to do so, at a price and upon terms satisfactory to himself, offered by some other person or purchaser without first giving to the lessee the right to exercise his option to purchase the land upon the same terms; and it cannot be presumed that the tenant would have taken the lease without this covenant, or that the landlord would have granted the concession without each understanding that it entered into and formed a part of the consideration moving between them.

Had the lessor in this case been required to fix a price in offering for sale, the decision would have been in point. But the language of the contract cannot fairly be so construed. To do so, it would be necessary to add a condition the parties did not chose to insert, and, of course, this is not permissible. To offer for sale means no more than to put on the market. Of course, one in doing so may offer at a fixed price, but this is not to be implied from the express offer to sell. Nor is there anything in the lease indicating that the parties so intended rather than to leave the matter of price to future negotations. Manifestly this was their design, and, the contract being indefinite in this respect, the court rightly held it not specifically enforceable.—*Affirmed.*