ED F. HOTZ, Appellee, v. EQUITABLE LIFE ASSURANCE SOCIETY, Appellant.

No. 44052.

DECEMBER 14, 1937.

REHEARING DENIED APRIL 8, 1938.

Barnes, Chamberlain & Hanzlik, Don Barnes, Donald P. Barnes, and Tinley, Mitchell, Ross, Everest & Geiser, for appellant.

John D. Randall and J. C. France, for appellee.

HAMILTON, C. J.—The transaction out of which this litigation arose is a very simple one, but the legal questions involved are not so simple or easy of solution. The contract, if there was a contract, consisted of a paper designated "FARM OFFER AND ACCEPTANCE BLANK", pertinent provisions of which are as follows:

"Cedar Rapids, Ia., June 24, 1935.

"To R. J. Harrison, Realtor, Agent for owner of the property hereinafter described:

"———— hereby offer to purchase the following described real estate, to-wit: (Here follows a description of real estate) for the sum of $47,500.00, Forty seven thousand and five hundred dollars, and I agree to pay said sum for the purchase of said property, to the owner thereof or to his agent, on terms as follows: Three thousand dollars ($3000.00) on execution of

this contract, receipt of which is hereby acknowledged. (Here follow provisions referring to deferred payments, and with reference to taxes and insurance and possession.)

"———— hereby tender three thousand dollars ($3000.00) as part purchase price of the above described property, said amount to be returned to purchaser in case this offer is not accepted; otherwise, to be applied upon the cash payment above provided for; but in case ———— shall fail to complete this contract, the amount paid hereon may, at seller's option, be retained as liquidated damages. In consideration of $1.00 in hand paid and for other good and valuable consideration, receipt whereof is hereby acknowledged I hereby agree that this offer shall be good and binding upon ———— if accepted by the owner of the above described real estate on or before July 15, 1935.

"[Signed] Ed F. Hotz.

"————, the owner of the above described property, hereby accepts the above offer and agrees to sell the said real estate according to the terms thereof.

"Accepted ————————————    ————————————

"Acceptance dated ————————————————, 19——.

"————————————————"

Accompanying this written offer was the check for the down payment, made payable to the appellant. Written thereon in the lower left hand corner are these words: "To be cashed when contract is signed." It is established without dispute that plaintiff refused to sign the offer until these words were written upon the check.

The question of whether or not there was an enforcible contract depends upon the question of acceptance of this offer. It is not claimed that there was any formal acceptance. The agent of the company, in disregard of the conditions written on the check, deposited the same in the company's account in the Merchants National Bank at Cedar Rapids, Iowa, in the regular course of business. It is claimed by appellant that this was done by inadvertence, mistake or accident, and the legal question presented is whether or not the cashing of this check under such circumstances amounted to an acceptance of the plaintiff's offer.

The pleadings present further collateral issues, namely, the limited express authority of the agent, and whether or not such

secret limited authority would avoid the effect of the cashing of the check; the question of estoppel on the company in setting up limited authority, in the face of apparent authority on the part of the agent to endorse and deposit checks of the company, and the question of estoppel, due to the alleged acceptance and retention of the $3,000; the ambiguity of the contract when the statement on the check is considered with the statement in the written offer; whether the plaintiff has sustained the burden of proof in establishing either actual or apparent authority on the part of the agent to make the contract or bind the company to acceptance by depositing the check.

The case is ably argued on both sides, but counsel on neither side has been successful in presenting the court with any authority where the facts are parallel with the facts in the instant case. Appellant cites and relies upon a line of cases which discuss the question of accident, fraud or mistake in the contract itself, or where there are uncertain provisions in the terms of the contract, and the court has refused to grant specific performance because of such conditions. But there is no mistake in any of the terms and provisions of this offer. It is a simple offer to purchase at an agreed price certain real estate on certain terms, and the only shadow of ambiguity which the appellant points out is in regard to the $3,000 down payment in the contract. This is tendered as part of the purchase price, and the amount is to be returned to purchaser in case the offer is not accepted, and the restriction is written on the check, "To be cashed when contract is signed." It is contended that this ambiguity is such as to render the contract unenforcible in an action for specific performance. We think the alleged ambiguity is more fanciful than real, and the authorities relied upon are not applicable.

■■■ Appellant's only other contention is that the agent in charge of the Cedar Rapids office, with whom all the transactions were had, had only limited authority, and that the burden was on the plaintiff to establish the authority of the agent to bind the company, where the agent was one with limited authority. It is undisputed in the record that in the written instructions to the agent he was given no authority to dispose of real estate or to enter into real estate contracts. His authority, according to the written instructions introduced in evidence, was limited to the submission of proposals for the sale of real estate

to the home office. In our examination of these instructions we discovered no specific authority for receiving down payment checks, or even depositing them in the company's bank account. There is no claim that the plaintiff had any knowledge of the secret instructions existing between the company and its agent. The appellant is a foreign corporation with its home office in New York, and the one avenue of approach to this great corporation was through its manager and agent who was in absolute control of its business in the Cedar Rapids area. The evidence shows that this corporation had title to some 1,000 farms and held loans on 1,500 other farms situated in 42 different counties in this area, the investment amounting to more than twenty-five million dollars. It maintained an office force which occupied the whole sixth floor of a large office building in Cedar Rapids and displayed a sign on which was inscribed, "The Equitable Life Assurance Society of the United States, Farm Investment Department, A. J. Stanfield, Manager." Mr. Stanfield was also held out to the public as "Loan Supervisor," and "Loan Supervisor, Mortgage Loan and Real Estate Department."

The evidence shows without dispute that the customary and usual way of handling deals of this character, namely, offers to purchase with accompanying down payments, was to forward the offers to the home office for their approval, deposit the down payment check in the company's account at the Merchants National Bank at Cedar Rapids, along with other money belonging to the company in a single account, and keep a separate account of these down payments on the company's books in the Cedar Rapids office in what was designated "suspense account." In 1935, 1,025 such deals were handled through this office. Whether down payments accompanied all of them is not shown. The plain implication from the evidence is that this custom had been followed habitually. There was testimony to the effect that a Mr. Olson, who at the time of this trial was vice president of the corporation, when asked who would have authority to carry out or negotiate this contract, replied in substance that the company employed the men in charge at the Cedar Rapids office and paid them, put confidence in them, and that he would have no authority to go over their heads, and that whatever was done should be done through the Cedar Rapids office. This, of course, is disputed by Mr. Olson. It stands to reason, however, that this

company necessarily would have to rely in a large measure on the good judgment and executive ability of the men and women in charge, and having permitted Mr. Stanfield and his office force, consisting of some 18 or 20 clerks and stenographers besides 11 or 12 fieldmen, to carry on this business in Iowa in the acceptance of these down payment checks and the habitual depositing of them in the bank, which would be fully revealed to the home office by the reports that would necessarily have to be made to the company from time to time under the written instructions, is in no position to assert, and should be estopped from asserting, as against one who had no knowledge of such secret instructions that the agent was without authority to accept and deposit such checks. See as bearing generally on this question, Wright v. Iowa Power & Light Co., 223 Iowa 1192, 274 N. W. 892; Boylan v. Workman, 206 Iowa 469, 220 N. W. 49; Wisconsin Lumber Company v. Telephone Co., 127 Iowa 350, 101 N. W. 742, 69 L. R. A. 968, 109 Am. St. Rep. 387; Equitable Life Assurance Soc. v. Thomas (C. C. A.), 69 F. 2d 361; Northwestern Mut. Life Ins. Co. v. Steckel, 216 Iowa 1189, 250 N. W. 476.

While the money was on deposit in the corporation account, it was checked out of this Cedar Rapids bank only by checks signed by Mr. Stanfield, the manager of the Cedar Rapids office. Hence, we conclude that there is ample evidence to sustain the proposition that Stanfield was clothed with authority to receive and deposit these down payment checks accompanying offers to purchase real estate belonging to the corporation.

■■■ This brings us to the crucial question, Did the depositing of this check under the circumstances amount to an acceptance of the plaintiff's offer?

It is not claimed at this time, neither can it be said from all the facts and circumstances surrounding the transaction, that it was contemplated by any of the parties connected with this transaction that any further or additional contract was to be entered into, other than the written acceptance on the part of the offeree. The writing, Exhibit C, when signed by Hotz, and if accepted by the corporation on or before the 15th day of July, bound Hotz absolutely. We think it must also be said that the acknowledgment of the receipt of this offer and the check with the written reservation thereon, had the check been deposited knowingly and intentionally by the company or by its author-

ized agent, would be an acceptance and would create a binding and enforcible contract. The only thing left to determine is whether the inadvertent depositing of this check, by reason of inattention, absentmindedness, or carelessness, changed the result. The matter has never been determined directly by this court, and we do not find an exact parallel case in any authority cited or to which our attention has been called.

In American Law Institute Restatement of the Law of Contracts, Volume 1, Par. 20, it is stated:

"A manifestation of mutual assent by the parties to an informal contract is essential to its formation, and the acts by which such assent is manifested must be done with an intent to do those acts; but, except as qualified by Paragraphs 55, 71 and 72, neither mental assent to the promises in the contract nor real or apparent intent that the promises shall be legally binding is essential." Illustration 4 under this paragraph states: "A writes an offer to B, which he encloses in an envelope and stamps. Shortly afterwards, he decides not to send the offer and determines to throw the letter into his wastebasket. Absentmindedly, he takes it up with other letters and deposits it in a mail chute. It is delivered to B, who accepts the offer. There is a contract." Paragraph 21 states: "The manifestation of mutual assent may be made wholly or partly by written or spoken words or by other acts or conduct."

Appellee cites a long line of cases dealing with accord and satisfaction, but these cases are not analogous to the question we have here. The case most nearly in point is Minnesota & Ontario Paper Co. v. Register & T. Co., 205 Iowa 1228, 1233, 219 N. W. 321, 323, which is an accord and satisfaction case, but it deals with this question of inadvertent depositing of a check. In that case there was a disputed account. A letter with a check enclosed was mailed to the creditor. Both in the letter and endorsed on the check was the statement to the effect that it was sent "in full of account" between the parties. This letter and check were received in due course, but through inattention or carelessness this statement was overlooked and the check was deposited. Three days after the deposit was made it first came to the attention of the creditor that the check had been tendered in full settlement, and an attempt was made to return the money and avoid this settlement. It was argued by the appellant that

there had been no meeting of the minds of the parties and this court held against the appellant and said:

"It is the generally recognized rule that if, through lack of attention, or carelessness, the creditor fails to understand the debtor's declaration that the check is sent in full discharge of an unliquidated claim, the acceptance by the creditor will be binding, even though the creditor neglects to read the condition as stated in the letter or check," and there is cited a long list of cases.

In the instant case the agent of the company saw the check. He noticed the restriction thereon. In acknowledging receipt of it he stated: "This also acknowledges receipt of check for $3,000 payable to Equitable Life Assurance Society dated June 25, *which is not to be cashed until and unless this offer is accepted.*" (Italics ours.) Mr. Stanfield, the manager of the Cedar Rapids office and agent of the corporation, was fully apprised of what was on the check and of its meaning. He testified that he handed the check to a Miss Heald who had charge of such matters, with oral instructions not to deposit it until they heard from the New York office. She testifies that through mistake she deposited the check. The stamp of the bank in which it was deposited shows that it was deposited on the 3d day of July. On the 5th of July, Hotz learned through the bank on which it was drawn, located in another town, that his check had been deposited and cashed. He therefore had a right to assume, in view of what he had said to the company's agent when he signed the contract, and what was written on the check, that his offer had been accepted. Stanfield testified that his attention was first called to the fact that the check had been deposited on July 8th. He immediately wrote a letter to the real estate broker, Harrison, advising him that it had been deposited by mistake, but he did not communicate with Mr. Hotz, and the first knowledge that Hotz had that the deal was not going through was about the 15th or 16th of July. He then went to the Cedar Rapids office of the appellant, in company with Mr. Harrison, to talk to the agent, Stanfield, but was unable to get Stanfield to discuss the matter, except to say that the deposit of the check was "an error." On the 13th of July, Stanfield received a letter from the New York office declining the offer, and he immediately wrote Harrison again, returning the written offer and enclosing a

check signed by himself on the company's account for $3,000. It should be kept in mind that Harrison was the agent of the corporation, and was never the agent of Mr. Hotz. However, in some way not disclosed by the record, this check and the cancelled offer reached the hands of Mr. Randall, attorney for the plaintiff, who on August 26, 1935, in a letter written to the company at Cedar Rapids, returned the said $3000 check and demanded specific performance. This letter was not answered, and the action was commenced.

Regardless of what was the mental intention of the one who made the deposit of this check, it must be said that the deposit was knowingly made. There is no way of disputing the testimony of appellant's witnesses that it was deposited by mistake. Under such circumstances the evidence must be closely scrutinized, and the conduct and appearance of the witness on the witness stand would be very beneficial to the court in weighing such testimony. In this respect the trial court was in a much better position to weigh the testimony than are we. There are some circumstances which might cast some suspicion upon the bona fides of appellant's contentions. These appear in the record, and it is not necessary to specially point them out, except to say that the letter of Stanfield dictated and mailed to the home office on the very day that he received this offer discloses the fact that when he received it it had already been rejected in his mind, and he was no doubt fully convinced the company would follow his recommendation and reject the contract, that he said nothing to Mr. Harrison, but received it in apparent good faith. The home office made no comment whatever in reply, except to say: "Following your recommendation the offer is declined." Whether a better offer had been discovered between the 18th day of June when Harrison first obtained the list price of this farm and the 30th day of June when he submitted the offer is not disclosed in the record by any competent evidence, except there is in the evidence the fact that Stanfield was in communication with another real estate agent concerning this same farm while this matter was pending. As bearing upon the question of mistake in depositing the check, the evidence shows that the lady who had charge of this matter was very competent. A thing like this never occurred before, this was the only check upon which there had ever been any written restrictions and the only check concerning which she had ever received any instruc-

tions not to deposit the same. The record also shows that on this particular day this was the only down payment check she received.

 In the analysis of this testimony, we do not wish to be understood as casting the least aspersion upon either of these witnesses, but simply point out its inherent weaknesses. The trial court had all the witnesses before him. He was dealing with an equity case. Specific performance is largely a matter of discretion with the trial court, and not a matter of absolute right. In weighing the equities the trial court found that they were with the plaintiff and entered his decree accordingly. We have carefully read this record and considered it from every angle, and we have reached the conclusion that there was a binding and legal contract enforcible in equity, and we are not inclined to disturb the trial court's finding that the equities are with the plaintiff. There is no showing in this record anywhere that the appellant will suffer any pecuniary loss, and that the contract price is not a fair and reasonable price, and no reason is suggested anywhere in the record which would warrant the court in refusing to enforce the contract if there was a legal, binding and enforcible contract entered into. The decree of the trial court is accordingly affirmed.—Affirmed.

ANDERSON, STIGER, SAGER, MITCHELL, DONEGAN, RICHARDS, and KINTZINGER, JJ., concur.