C. W. Down, Appellee, v. Jess M. Coffie et ux., Appellants.

No. 46507.

July 28, 1944.

Rehearing Denied October 20, 1944.

Clem & Miller, of Sioux City, for appellants.

Shull & Marshall and John J. Vizintos, all of Sioux City, for appellee.

Mantz, C. J.—The issues in the trial court as set forth in its finding and decree are as follows:

"This is an action by plaintiff for farm rent, coupled with a cross-petition for specific performance in which the defendants seek an order for conveyance from the plaintiff purchaser, the defendants alleging a prior option agreement to purchase the farm between them and the previous title owner and that the plaintiff had full knowledge of such option previous to his purchase."

The trial court gave judgment against the defendants for the rent sued for and dismissed defendants' cross-petition. Defendants appeal but have confined such appeal to the issues raised by the cross-petition. The judgment for the rent stands as decreed by the lower court.

I. The action was brought by plaintiff against defendants in the municipal court of Sioux City, Iowa, but, upon the filing of the cross-petition asking for specific performance of a claimed oral option agreement to purchase the land from plaintiff's grantor, the court ordered the case transferred to the district court of Woodbury County, Iowa. A brief statement of some matters connected with the origin of the litigation may be helpful.

II. The land involved is eighty acres situated in Woodbury county. In 1933, Helen T. Murphy, plaintiff's grantor, bought this farm, paying $8,000, of which $5,000 was represented by a mortgage. Helen T. Murphy is the mother of Marian M. Coffie and Jess M. Coffie is the husband of Marian. When Mrs. Murphy bought the farm there was a tenant thereon. The Coffies bought a one-hundred-thirty-five-acre farm adjoining and the initial payment of $1,725 was loaned to them by Mrs. Murphy. The land was purchased from the Prudential Life Insurance Company under terms calling for an initial payment of ten per cent of the purchase price. At that time the eighty acres were rented to another party. Following this the Coffies rented the eighty from Mrs. Murphy but did not live thereon, farming the land and renting the buildings. During this period and up to the time suit was brought the agreed rental between Mrs. Murphy and the Coffies was that the tenant should pay the interest on the mortgage, taxes, insurance, and upkeep.

Sometime in January 1942, Mrs. Murphy, through a real-estate bróker, sold the eighty acres to appellee, C. W. Down. The contract had in it the following provision: "Subject to the rights of present tenant." On February 17, 1942, this contract was merged into a warranty deed between the parties and included therein the following provision: "This conveyance is subject to lease with J. M. Coffie expiring February 28,

1943, the Grantor's rights under said lease being hereby assigned to Grantee." The grantee, C. W. Down, had no contacts with appellants.

About November 1, 1942, appellee served notice upon appellants to deliver possession of the premises on March 1, 1943, and shortly after that date appellants did deliver possession to appellee.

Appellee, by his agent, contacted the appellants in an effort to collect the rent then past due. They neglected and refused to pay such rent and action was brought to collect the same. It was at that time appellants filed a cross-petition praying for the specific performance of an oral option contract to purchase the eighty acres which they claimed to have had with Helen T. Murphy at the time the latter purchased the eighty acres.

At the time the case was tried below Mrs. Murphy was under guardianship and did not testify.

III. The first proposition relied upon by appellants for a reversal of the decree of the court is as follows:

"There was a valid, enforceable option agreement between the defendants and Helen T. Murphy entitling the defendants to the first chance to buy the farm at the current market price when Helen T. Murphy decided to sell the farm."

The alleged agreement with Mrs. Murphy, as set out in the cross-petition, is as follows:

"That at the time said premises were purchased it was orally agreed that the defendants should go into immediate possession of said premises, pay interest on the mortgage and current taxes and improve said lands and whenever said defendants should become financially able to repay the said Helen T. Murphy this original purchase price without interest the said Helen T. Murphy would convey said lands to the defendants for the use and benefit of the grandson."

Following the submission of the case, the trial court, speaking of this claimed agreement, in its decree stated:

"The testimony offered by the cross-petitioners was vague, indefinite and not at all convincing, and the Court, even in the

absence of testimony from Helen T. Murphy, is of the opinion that no agreement was ever entered into by Helen T. Murphy giving the cross-petitioners a right to purchase; that the cross-petitioners in their testimony were merely expressing their hope and wishes arising from their relationship with Mrs. Murphy, and that any conversations they may have had with Mrs. Murphy along this line never attained the dignity of an agreement. It will be observed that no details of purchase nor conditions of the payment were agreed upon, and nowhere is anything said as to tender of payment or present ability of the cross-petitioners to pay the consideration.''

We have gone over the record and have carefully examined the evidence given by appellants as to such claimed agreement and fully concur in the finding of the trial court, and we do this on the assumption that all of the evidence given in respect to said claimed agreement was competent. The appellants rely upon certain conversations with Helen T. Murphy to establish their claim.

We will set forth parts of the evidence given by the appellants in support of their claim of an oral option agreement with Mrs. Murphy. Appellants offered considerable testimony concerning various dealings claimed to have been had between them and Helen T. Murphy and culminating in the claimed oral option agreement for purchase. However, this would indicate little else than a natural desire on her part to be of some help to appellants on account of the family relationship. She loaned them money with which to purchase another farm, taking their note, which the evidence shows is still unpaid. She purchased the eighty acres and rented it to them on rather favorable terms.

Jess Coffie testified to various conversations with Mrs. Murphy as to the eighty acres. He said that he had no arrangements with her (Mrs. Murphy) as to whether he was to take the land subject to the mortgage, or assume the mortgage on it; said he supposed that would be agreed upon when he got the farm. He said no price or terms were agreed upon; that he supposed that would be agreed to later. We set out from the record a few questions and his answers:

156

"Q. And when you made this deal in 1933 was anything said as to when Mrs. Murphy might want to sell? A. Yes. Not when she might want to, she said she wouldn't sell the farm until she needed money to live on. * * * Q. So at that time you didn't know whether she might need money one year or ten years as far as you were concerned? A. That is right. Q. In other words if you would come in in 1940 and say 'I want to buy the farm' she wouldn't have to sell it to you that year unless she wanted to sell, that would be right? A. I suppose. * * * Q. How were you going to figure out what the price should be when she wanted to sell, was she going to fix that or were you, or how were you going to do it? A. Well, I figured that we could figure that out between us, we always had figured those things out and got along. Q. In other words that was to be a matter of agreement between you and her as to the performance, you would have to agree to it and she would have to agree to it, that would be right wouldn't it? A. I suppose so."

Many other matters usually agreed upon in the matter of sales were either indefinite or not mentioned, such as abstract, right of survivor to buy or sell, terms of payment, etc.

We think that the evidence of Mr. Coffie as to the agreement may be, in effect, summed up as follows:

"In case Mrs. Murphy wanted her money out of the land we were to pay her and if we had the money to pay her we would have the first chance to purchase it. We had this agreement with her when she got the deed for the eighty acres in 1932 or 1933. It was the understanding that we were to have a chance to buy the land for us and our grandsons."

Coffie was asked if he was able to pay the price in the event one was agreed upon and he said that he could. While this is not contradicted, yet the fact remains that about ten years before he had borrowed over $1,700 from Mrs. Murphy to make the down payment on the other farm and that this has not been paid and suit for it has either been instituted or threatened. He makes no showing as to how he expected to pay for the eighty acres in case he and Mrs. Murphy made the deal.

The testimony of Mrs. Coffie as to the claimed option agreement is much along the line as that given by her husband. She claimed that she was present at some of the conversations. She testified that Mrs. Murphy told her husband to go and look for land and she would invest; that if she ever needed the money, "we should be able to buy it if we had the money to pay for it." She further stated that, "she always wanted to be sure we had the money to pay for it."

The conduct of the Coffies following the sale is rather inconsistent with the claim which they now make. When the notice was served on November 1, 1942, advising them to quit the premises on March 1, 1943, they did nothing to indicate that they were intending to make adverse claims. When they were asked to pay the agreed rental had with Mrs. Murphy they made no claim to any rights in and to the land. When Mr. Coffie was asked to pay the 1942 rent he answered that he would take care of it. Upon a second demand he gave a like answer.

Another circumstance shown by the record is quite significant as bearing on the conduct of the appellants. Following the sale of the eighty acres Mrs. Murphy had employed counsel to collect the note given by the Coffies to Mrs. Murphy when the one hundred thirty-five acres were purchased by the Coffies; also for the purpose of defending an action brought by the Coffies to place Mrs. Murphy under guardianship. This attorney testified that appellants informed him that the only reason for the guardianship was to enable them to set aside the sale of the eighty acres on the ground that Mrs. Murphy was incompetent to convey. This attorney further testified:

"When I told them that I thought it was a terrible thing for them to bring an action against their own mother and charge her with incompetency they then said they thought she sold the land too cheaply to Wolle, that it was worth more."

Appellants do not deny this testimony.

We do not think it necessary to go at length into an analysis of the cases which hold that it is a familiar rule that contracts, to be specifically enforced, must be so certain and definite in their terms as to leave nothing to conjecture or to be

supplied by the court. Donovan v. Murphy, 203 Iowa 214, 212 N. W. 466; Marti v. Ludeking, 193 Iowa 500, 185 N.W. 476; Wolf v. Lodge, 159 Iowa 162, 140 N. W. 429; Myers v. Myers, 197 Iowa 1137, 198 N. W. 484; Lane v. Sac County St. Bk., 209 Iowa 437, 227 N. W. 911; Pomeroy's Specific Performance of Contracts, Third Ed., section 148; annotations 122 A. L. R. 1220, 136 A. L. R. 138.

Both parties cite Wolf v. Lodge, supra, and appellants place considerable reliance thereon. In that case plaintiff was a tenant under a lease which provided against assignment and which contained therein the following provision: "Said lessor agrees, whenever he shall offer the above-described land for sale, he will give said lessee the first opportunity to buy the same." The lessor died devising the land to his widow, who at her death devised the same to Lyde and Tamar Ball, who later sold the same to Lodge. Plaintiff alleged continuous occupancy of the premises, that the purchaser had notice of his claim, and that plaintiff was "still entitled to purchase the land at the price for which said land was sold to said Urban E. Lodge, because of the failure of said defendants, Lyde and Tamar Ball to give him an opportunity to exercise his option to purchase said land," and prayed for specific performance. A denial of his claim was affirmed by this court. This court held that a contract, to be specifically enforced, must be mutual, but recognized the exception where the agreement to convey is a part of the lease and enters into its consideration.

We hardly think that the present case comes within the rule laid down in the Wolf case, especially as claimed by appellants. There, as here, no price was fixed; other terms were lacking or indefinite. We question if the so-called option agreement, even if made, was a part of the lease; certainly under the record it was not contemporaneous. If it be assumed that it was a part of the lease, it still does not assist appellants. Ladd, J., quoted in the Wolf case, supra, from Pomeroy's Specific Performance of Contracts, section 148:

" 'It [the price] must either be fixed by the agreement itself, or means must be therein provided for ascertaining it with certainty. In the absence of such provision, either stating

it or furnishing a mode for fixing it, the agreement would be plainly incomplete, and could not be enforced; and if the contract is written, this term must appear in the memorandum or written instrument.' "

The present claimed option agreement, under the evidence of both Coffie and his wife, is uncertain in so many particulars that we do not think that a court of equity would be justified or authorized to order its specific performance. Dunlop v. Wever, 209 Iowa 590, 228 N. W. 562, holds that specific performance is not a matter of right but, in a proper case, should not be denied unless some good reason is shown for so doing. Hotz v. Equitable Life Assur. Soc., 224 Iowa 552, 276 N. W. 413.

We have gone over other matters presented in this appeal. The second proposition urged by appellants is that appellee was chargeable with notice of the rights of appellants with respect to said farm and appellee (plaintiff) took the farm subject to appellants' rights under their option agreement with Helen T. Murphy. In view of our holding herein that appellants failed to establish the claimed oral option agreement to purchase, we do not find it necessary to pass upon such proposition. In passing, we think, however, under the record in this case, that appellee had no notice such as is contemplated under our decisions.—Affirmed.

All JUSTICES concur.