Frank J. Vermeulen, Appellant, v. Inez R. Meyer, Appellee.

No. 47054.

October 14, 1947.

Martin F. McCarthy, Jr., of Davenport, and Virgil Bozeman, of Moline, Illinois, for appellant.

Chamberlin & Chamberlin, of Davenport, and Sidney S. Deutsch, of Rock Island, Illinois, for appellee.

MANTZ, J.—The plaintiff claims that on October 23, 1943, he entered into a written contract with the defendant wherein he agreed, for a consideration of $7,000, to be paid as provided therein, to purchase certain property in the city of Moline, being parts of Lots 7 and 8, Block 2, of Pitts, Gilbert & Pitts (First) Addition to such city. He further claims that he complied with all of the terms of said contract but that the defendant has failed and refused to carry out her part of said contract. He further pleads that he has tendered the purchase price and offered to fully perform.

Defendant, answering specifically, denies the allegations of plaintiff's petition and alleges that she was induced to enter into said contract by reason of the fact that she was misled by various acts of misconduct on the part of plaintiff and of the brokers who had the property listed for sale; that the broker acting for her was likewise acting for plaintiff, all without her knowledge and consent; that the contract entered into is unconscionable, one-sided, and all in favor of plaintiff; that said contract is unjust, unreasonable, and in equity should be so decreed and not used as a basis of specific performance. Defendant prays that plaintiff's cause of action be dismissed for want of equity. She admits plaintiff's tender and her refusal thereof.

The case was tried and the court refused to decree specific performance of the contract sued upon and this appeal followed.

The action is in equity and triable here de novo. Appellant urges but one error in brief and argument and that is:

"The court erred in refusing to order specific performance of the contract sued upon."

Appellee in brief and argument sets forth two propositions to sustain the ruling of the trial court. Such propositions are:

1. The court did not err in refusing to order specific performance of the contract sued upon; and

2. If the trial court's findings are at all supported by the evidence they will not be disturbed.

The property involved is situated in Illinois, the contract sought to be specifically enforced was entered into there, and the parties thereto are residents of that state. The action is being prosecuted in this state. As the laws upon the remedy of specific performance of the states of Illinois and Iowa are substantially the same, we find it unnecessary to go into the question as to which law governs, as there was no issue upon that point. However, it has generally been held that the law of the forum applies with respect to the remedy in such cases. 15 C. J. S., Conflict of Laws, section 22b.

The remedy of specific performance is, in the last analysis, a matter of equity rather than a strict right. Healy v. Hohn, 157 Iowa 375, 138 N. W. 551; Baker v. Fowler, 215 Iowa 1157, 247 N. W. 676. Specific performance rests in the sound discretion of the court. Such was the holding of the court in the early case of Young v. Daniels, 2 (Clarke) Iowa 126, 63 Am. Dec. 477. Therein the court held that an application to enforce specific performance of a contract was always addressed to the sound discretion of the court, and was not granted as a matter of right, but was granted or withheld according to the circumstances of each case. New York Brokerage Co. v. Wharton, 143 Iowa 61, 119 N. W. 969; Ellsworth v. Randall, 78 Iowa 141, 42 N. W. 629, 16 Am. St. Rep. 425; In re Estate of Creger, 198 Iowa 833, 200 N. W. 332; Hotz v. Equitable L. Assur. Soc., 224 Iowa 552, 276 N. W. 413; Chicago Title & Tr. Co. v. Schwartz, 339 Ill. 184, 171 N. E. 169; Keating v. Frint, 291 Ill. 423, 126 N. E. 136; Sugar v. Froehlich, 229 Ill. 397, 82 N. E. 414; Stone v. Pratt, 25 Ill. 25; Cowan v. Curran, 216 Ill. 598, 75 N. E. 322; Friend v. Lamb, 152 Pa. 529, 25 A. 577, 34 Am. St. Rep. 672; Willard v. Tayloe, 8 Wall. (U. S.) 557, 19 L. Ed. 501; White Tower Management Corp. v. Taglino, 302 Mass. 453, 19 N. E. 2d 700, 121 A. L. R. 1158; Pomeroy Specific Performance of Contracts, Third Ed., section 4; 58 C. J., Specific Performance, sections 1–3.

██ The remedy of specific performance is an equitable remedy governed by equitable principles; equity will not decree specific performance of an inequitable contract or an unconscionable bargain, but will leave the party to his remedy at law. 49 Am. Jur., Specific Performance, section 6.

In the case of New York Brokerage Co. v. Wharton, supra, 143 Iowa 61, 66, 119 N: W. 969, 971, specific performance was denied, and in so doing the court said that specific performance is not a matter of strict right but is an extraordinary remedy and should be awarded where the contract is conscionable and equitable. In that case the dealing was with an undisclosed principal and it was argued that this was not a material fact. Of this the court said:

"We think otherwise. It is the right of a party to a contract to know with whom he deals unless he consents to deal with an agent in behalf of an undisclosed principal."

In the case of Ellsworth v. Randall, supra, the court held that it was the right of a seller to select his own grantee. Therein the court held that the party seeking to enforce the contract was not the person for whom the agents represented that they were acting. He had a right to refuse to complete the contract if one had been made, and his reason for so doing was not material. White Tower Management Corp. v. Taglino, supra.

We think that the two cases last cited (New York Brokerage Co. v. Wharton and Ellsworth v. Randall) have application in the instant case, in view of the fact that the appellee claims that she was led to believe that the prospective purchaser was other than the appellant.

Many other authorities from the various jurisdictions might be cited but we think those set forth above correctly state the general rule to be applied in this case.

██ Primarily the trial court based the decision upon the record facts. We agree with the conclusion of that court that under the peculiar circumstances appellant was not entitled to a writ for specific performance of the contract of October 1943, between appellee and appellant. Under the facts the matter rested in the judicial discretion of the trial court and to over-

turn the decision it must appear that there was an abuse of discretion. Such showing is lacking.

There were conflicts in the evidence. Appellant's evidence for the most part was given by Meersman, the agent who handled the transaction with appellee. Much testimony given by him directly conflicts with that given by appellee and her witnesses. We hold that there were in the record sufficient facts to sustain appellee's claim. Some of these facts we will enumerate. From them proper inferences may be drawn.

Inez R. Meyer, appellee, was a widow, aged fifty-one, a nurse, working whenever her health permitted. She had a minor daughter. Her husband died in 1936. The property involved was inherited from her deceased husband. It was a business property, located in a business district in Moline, Illinois. It was a substantial two-story brick structure, the first floor of which had been used for various businesses. Upstairs was a modern five-room apartment. Prior to 1940 the building had been occupied by a baker. The baker vacated and appellee left the rental to the Rank Agency. They rented the downstairs for a bowling alley and before the bowling alley took over changes costing about $3,700 were required. Mr. Rank arranged a loan to take care of such costs. Appellee was anxious to secure rentals to assist in the support of herself and minor daughter. The Rank Agency was located in Moline, Illinois, and it apparently had some connection with a bank of which Mr. Rank was an officer. The agency itself dealt in real estate and insurance and was operated in 1943 by three agents and a secretary. The agents were Meersman, Peterson, and Liljegren. Meersman had known appellee for years and had transacted business for her and advised her and the record shows that she reposed trust and confidence in him. He was in charge of leasing the property. After the bowling alley moved out appellee and Meersman discussed the future rental. He stated that the building was not in good condition for rental, and somewhere in the discussions appellee was told that it would be necessary to spend from $5,000 to $6,000 to put it in shape to rent. Faced with this situation, and under the advice of Meersman, appellee listed the property for sale under the appraisal of Meersman that it was worth $7,500. Later, appellee contacted Meersman about its sale and

at his suggestion an ad was run in a Moline newspaper for five days. On October 20th Meersman called appellee and informed her that he had a response to the ad from a Mr. Frank, who, he said, was seriously interested in the property.

Appellee states that on October 22d she went to Moline and there met Meersman and he suggested that Mr. Frank would pay but $7,000 and suggested that appellee reduce the list price $500. She further testified that when she hesitated, Meersman insisted that the building was in deplorable condition and was not rentable. She testified that while she was talking to Meersman about the Frank offer, another Rank salesman, Liljegren, came to where appellee and Meersman were standing, jangled some keys, and said to them:

"I have the keys to the Meyer [appellee's] Building. I am going to show a prospect through." Also he said, "Mrs. Meyer, I'm going to sell your building," and she said, "That's fine."

Meersman denied this conversation but appellee's testimony in regard to it is corroborated by Liljegren, a witness for appellant. Appellee further testified that on the following day Meersman called her and 'said the building was sold to Mr. Frank for $7,000. She asked, "Is that the best you can do?" He said, "Yes, it's the best I can do."

When appellee met Meersman, who had the contract, she thought she had sold to Mr. Frank. Appellee stated that Meersman told her that Frank had changed his mind and that he had sold it to Dr. Vermeulen, appellant. The latter is a brother-in-law of Meersman and owned property adjacent to that of appellee, and he and Meersman together owned the property on the other side of appellee's property. Appellee denied that she knew of the ownership of the properties adjacent to her property, or the relationship between appellant and Meersman.

The contract signed by appellee and appellant bears date of October 23, 1943. It was also signed, "R. W. Rank Agency, by D. A. Meersman."

While the contract bears date of October 23d, there is evidence it may have been signed on October 25th. Meersman testified:

"I can't recall if Mrs. Meyer signed the contract on Saturday, October 23, or Monday, October 25, 1943. It might have been either Saturday afternoon or Monday morning."

He said that appellee first found out that appellant was to be the purchaser when the contract was signed.

The agent, Meersman, testified that appellee signed the contract in the afternoon and in the office of her attorney. Appellee testified that she signed the contract on October 25th. Agent Liljegren testified that he had worked for the Rank Agency for four years and was so employed on October 23, 1943. We quote from his testimony:

"I am employed by R. W. Rank Agency, Moline, and have been employed there for four years. I was employed there on the 23rd day of October, 1943 and for about a year prior to that time. I am acquainted with the property known as 1405–1407 Seventh Avenue, Moline, Illinois. That property was listed for sale with the R. W. Rank Agency for six or eight weeks prior to October 23, 1943. This property was listed with the R. W. Rank Agency and was open for all three salesmen to work upon. I was interested in and working upon this particular piece of property at that time. The last two weeks before the sale was made I worked on the deal almost every day. I had five or six good prospects on the place. I finally went to Mr. Carlson on Friday, October 22nd, and talked to him about the building and he wanted to wait until the next morning to see it. I went back in the morning and he tried to get the property for less than $7,500.00 but I finally got him up to $7,500.00. He gave me a check for $100 and a contract for a certain figure. This happened somewhere around 8:15 or 9:20 in the morning. I then walked to the office and handed this check to the secretary and I said to her, 'I have sold the Meyer building,' and she replied, 'You are about a half hour late. Mr. Meersman sold it about a half hour ago.' I went back to Mr. Carlson and give his check back and told him the deal was off."

It is clear from the evidence that the Carlson offer of $7,500 was in the Rank Agency office before Meersman presented the contract to appellee, whether the same day or the Monday following. Liljegren testified that he had a contract with Mr.

Carlson but after the secretary informed him that Meersman had sold the property about an hour before he did not give her the contract. He further stated that both he and Meersman were representing appellee in the sale of the property. We quote from his testimony:

"I remember the time when Mrs. Meyer was talking to Mr. Meersman in the lobby of our building and I said, 'I am going to show your building or sell it.' It was Friday, October 22, 1943 at 4:30. Mr. Meersman heard my statement. I had the keys to the building and I dangled them in front of Mrs. Meyer. I had Carlson in mind as my prospect. I showed the building that night but could not get him to make an offer at that time. The next morning he wrote out a check as a deposit on the property and signed a contract for the building at a price of $7,500.00. I brought Mr. Carlson's check for $100.00 to the R. W. Rank Agency on Saturday morning and gave the check to the secretary. I did not give the secretary the Carlson contract because she told me that Mr. Meersman had already sold the property. Q. Did you inquire what he had sold the building for? A. I asked her and she said, 'I haven't got the contract,' because we aren't in the habit of turning in the contract. There is a sales force and before you get things signed up, you keep things in the dark. Q. Did you make any inquiries to find out? A. No, I didn't. I was told it was sold and that's all."

It is clear from this record that Liljegren had a legitimate offer from Carlson of $7,500 before appellee signed the contract presented to her by Meersman. Meersman knew that Liljegren was trying to sell the property and had a prospective buyer. The record shows that the Rank agents did not co-operate and collaborate with each other while working to sell the same property. The record shows that about the time the contract with appellee was signed she was informed that it would be necessary to spend from five to six thousand dollars to put the place in shape to be rentable. We do not find this statement denied in the record. The appellee stated:

"If I had known that the property could have been rented without alterations to bring in sufficient income for myself and my daughter I would not have wanted to sell the property."

Under the record, the trial court could properly find that the Rank Agency did not sell to the highest bidder then available and known to said agency. The $7,500 bid was in before appellee signed the contract. Instead, it sold to appellant for $7,000. All of this was unknown to appellee at the time she signed. The agency would be required to sell to the bidder offering the most money. The appellee was entitled to a full and fair disclosure as to the bids made; also, as to who was making the bids.

While Meersman denies that he was acting as agent for appellant in the deal, or that he was allowing his relationship to influence him in selling to appellant, we think that a contrary inference might be drawn from the record. Meersman denied that he told appellee that a Mr. Frank had made an offer for the property or that he proposed to sell to him. Yet he admits that he first informed appellee that appellant was the buyer when he presented the contract to her. We think that it could be inferred from the record that his actions and statements had the effect of misleading appellee. He knew that another agent was working on the property. The other agent had so advised him. He had transacted other business for appellee and she had confidence in him and believed that he would deal fairly with her in getting the highest and best price obtainable for the property. She was inexperienced in business and this fact was doubtless known to Meersman. The situation called for the utmost good faith. Judged by the results as above set forth she did not receive it.

Appellant has suggested that he took no part in inducing appellee to sign the contract and that his actions did not contribute to her mistake in the deal in being ignorant of the fact that Meersman was related to appellant and that appellant had property adjacent to the property of appellee.

It has been suggested on behalf of appellant that he took no part in inducing or contributing to any mistake of appellee as to the identity of the purchaser and of the situation and location of his property with respect to the property of appellee. However, the record does show that in dealing for the property he looked to Meersman to take care of his (appellant's)

interest. It could be inferred that he knew that the value of his property and also that of the purchased property would be enhanced by such purchase. Even assuming that there is merit to his claim, yet, under the rule, he would not be entitled as a matter of right to a decree of specific performance. We quote the rule as set forth in 49 Am. Jur., Specific Performance, section 55:

"While it is a well-established doctrine that equity will not enforce a contract when the plaintiff contributed to or induced the defendant's mistake or misapprehension, the discretion of a court of equity to refuse specific performance of a contract entered into under mistake is not limited to cases in which the mistake was induced or made probable or possible by conduct, acts, or omissions of the plaintiff. Even though the mistake is that of the defendant or his agent and the plaintiff is neither directly nor indirectly responsible therefor, the court may, and ordinarily will, refuse a decree of specific performance where the mistake is a material one and the enforcement of the contract under the circumstances would be inequitable or a hardship to the defendant, particularly where the plaintiff does not claim to have changed his position before he was notified of the mistake or suffered any loss by reason of having entered into the contract. If the mistake was occasioned by the negligence of the defendant but the enforcement of the contract would be inequitable or a great hardship to him, its specific performance will be denied. In such cases, the court is governed by the principle of hardship and unfairness equally with that of mistake. Mistake of the defendant will not be a defense, however, where the plaintiff has altered his position without having acquired knowledge of the defendant's mistake. When mistake is not contributed to or induced by the complainant, the court's refusal to enforce the contract depends in reality upon the existence of elements other than mistake which in and of themselves are usually sufficient to justify the court in refusing to enforce a contract."

We think that the record shows that appellee in signing the contract acted under misapprehension as well as mistake. As applied to such a situation, the general rule is that

the equitable remedy of specific performance of a contract is governed by equitable considerations so completely that the granting of relief is generally said to be discretionary. Davidson v. Hurty, 116 Minn. 280, 133 N. W. 862, 39 L. R. A., N. S., 324. Such relief is never granted unless it is in accordance with equity and good conscience.. 49 Am. Jur., Specific Performance, section 54. As is often stated, an agreement to be specifically enforced must have been entered into without misapprehension, misrepresentation, or oppression. Frisby v. Ballance, 4 Scam. (Ill.) 287, 39 Am. Dec. 409; Mechanics Bk. v. Lynn, 1 Pet. (U. S.) 376, 7 L. Ed. 185.

As heretofore stated, specific performance is not a matter of absolute right and is discretionary with the court. The cases quite generally hold that specific performance must not result in undue hardship and it is the general rule that it will be granted where it appears from the circumstances of the particular case that it subserves the ends of justice; and that, on the other hand, it will be denied when it appears that it will produce hardship or injustice to either of the parties. See cases before cited. See, also, 58 C. J., Specific Performance, section 152; Siess v. Anderson, 159 Mo. App. 656, 139 S. W. 1178.

There is nothing in the record to indicate that appellant has in any manner changed his position by reason of the failure of appellee to convey. The record affirmatively shows that to enforce the contract will work a hardship and injustice upon appellee. The evidence shows that the property was worth much more than it was listed at by the Rank Agency. It shows, too, that before appellee was induced to sign the contract of sale a higher and better offer was in the Rank Agency; that this offer was bona fide and by a responsible bidder. Appellee was a widow and inexperienced in business matters. She relied upon the agent, Meersman, and we think it can be inferred from the facts and circumstances that her trust in him was abused. We hold, as did the trial court, that appellant is not entitled to a decree of specific performance. The decree of the trial court is affirmed.—Affirmed.

OLIVER, C. J., and BLISS, GARFIELD, HALE, HAYS, MULRONEY, and SMITH, JJ., concur.