MERKLE-HINES MACHINERY COMPANY, Appellee, v. K. C. GAYNOR, Appellant.

SALES: Secondhand Article Sold as New. The statement, duly relied on, that a secondhand machine, purchased without opportunity for inspection, (a) is in first-class condition, (b) has not been used more than six months, and (c) will carry the same guaranty as a new machine, which latter guaranty calls for full capacity and efficiency, constitutes a warranty, not only as to its first-class condition and length of prior use, but that it was equal in capacity and efficiency to a *new* machine. This is true even though the seller did not know the precise use to which the machine would be put.

SALES: Reliance on Warranty. The presumption will be indulged that a warranty was relied on, when it was an interwoven part of the contract of purchase and the consideration paid.

*Appeal from Woodbury District Court.—J. W. ANDERSON,*
Judge.

JANUARY 20, 1919.

ACTION for purchase price of a steam·turbine, sold by plaintiff to defendant. Judgment for plaintiff. Defendant appeals. The facts are stated in the opinion.—*Reversed.*

*Sears, Snyder & Boughn,* for appellant.

*W. W. Hoye* and *Carter, Brackney & Carter,* for appellee.

STEVENS, J.—I.   This is an action to recover the purchase price of a steam turbine generator, with counterclaim for damages on account of the breach of alleged warranties in the sale thereof.   The purchase price agreed upon, and the delivery of a turbine was admitted by defendant, and a trial was had to a jury upon the counterclaim, resulting in a verdict for plaintiff by direction of the court. Something is said in the pleadings and in the evidence touching rescission; but we give no attention to this question, for the reason that defendant's counterclaim is not bottomed upon rescission, but is an action at law, to recover damages for an alleged breach of a contract of warranty, and not based upon the thought of rescission, which would be an action to recover the purchase price.

Prior to October 28, 1914, defendant had a conversation with F. M. Beeson, plaintiff's manager at Omaha, Nebraska, regarding the purchase of a secondhand steam turbine, as the result of which, plaintiff, on October 28, 1914, wrote defendant as follows:

1. SALES: second-hand article sold as new.

"Regarding our conversation of recent date, in which you asked the writer to get you prices on a secondhand 100 KW turbine, wish to say that we have taken this matter up with our factory, and find that they have a 100 KW., 125 and 250 volts, 3-wire ma·

chine, which is now loaned to a New York Company for temporary use, which they will sell for $2,500.00 f. o. b. factory.

"They also state that they have a 50 KW., 250 volt machine, which they could ship within two weeks, for $900.00 f. o. b. factory. Both of the above machines are in first-class condition, and would carry the same guarantee as a new machine, as neither of them have been run to exceed six months."

On November 2d, defendant replied to the above letter as follows:

"Please ship me at once the 50 KW. turbo generator set, described in your letter of last week. The price to be nine hundred dollars ($900.00); terms 90 days.

"Ship the above as soon as possible to Sioux Rapids, Iowa, via the Northwestern."

The turbine delivered was a secondhand machine, and was shipped to defendant from an eastern point, without opportunity for defendant's inspection. Defendant desired the machine for use in his printing office at Sioux Rapids, Iowa. The language of plaintiff's letter, relied upon as constituting the warranties, the breach of which is alleged by defendant in his counterclaim, is the following:

"Both of the above machines are in first-class condition, and would carry the same guarantee as a new machine, as neither of them have been run to exceed six months."

It is conceded that the guaranties of a new machine are contained in the catalogue of the Kerr Turbine people, a copy of which was, at the time he purchased the machine in question, in defendant's possession, and with which he was familiar. The meaning and extent of the guaranty therein contained is, however, a matter of dispute. The following paragraph is quoted therefrom by counsel for appellee, as comprising the sole guaranty carried by a new machine:

"The company guarantees the apparatus and equipment described herein to be of the full capacity, efficiency, and other qualifications stated in the attached specifications, and agrees to correct any defects which may develop in same within one year from date of shipment, and supply parts therefor f. o. b. Wellsville, N. Y., if said defects are traceable to faulty material or workmanship, provided the purchaser gives the company immediate written notice of such defects."

Based upon the letter of October 28th, and the following extracts from the catalogue of the Kerr Turbine Company, counsel for appellant contend that plaintiff warranted the turbine to be in "first-class condition;" that same had not been used to exceed six months; and that same was, in efficiency and capacity, the equivalent of a new machine. On the other hand, counsel for plaintiff interpret the reference in the letter to the condition of the machine as "dealer's talk," or the mere expression of an opinion, and the statement that it had not been used to exceed six months, as mere description, and not a warranty.

Counsel for appellee further contend that the warranty of a new machine was intended only to assure the purchaser against defects of material and workmanship for one year, with the right to have defective parts replaced upon notice. Defendant, called as a witness in his own behalf, testified that it was orally understood, in the conversation between himself and Beeson at Omaha, that the machine was to be of an improved type, known as an "Economy" steam turbine; that the machine delivered was, in fact, an old type, which had been in use for a much longer period than six months, and was not in first-class condition. Concerning the condition and efficiency of the turbine delivered to him, defendant testified as follows:

"On the electrical end of the machine, the brushes were worn clear down, and the ends of the commutator showed

where it had been machined down; been put in a lathe, and
marks of the brushes cut off to the extent of about three
quarters of an inch in diameter; on the same end, the pack-
ing gland around the governor rod was gone, or worn out,
and the pin on which the governor operated was worn down,
so that the oil grooves were worn completely off of it.   Bas-
ing my opinion on my experience as an engineer and an elec-
trical engineer, it would take a machine, ordinarily, a year,
with continuous service, to wear out the brushes on the
commutator such as were worn out on this machine.   Bas-
ing my opinion upon my experience as an engineer, the pack-
ing gland might go out under comparative short use, but
the governor pin would not wear off that way; should not
wear off that way in the whole life of a machine.   We
never operated this machine at its rated capacity; we could
not get that much on it; when we attempted to operate it
at its rated capacity, and started to put the load on and
pull it up, after we reached about 150 amperes, as we put on
more load, the machine began to lose speed and voltage.
*   *   *   The machine that I received from the Merkle-
Hines Machinery Company did not measure up to the guar-
anties on new machines; the machine which I purchased
from the Merkle-Hines Company failed to measure up to
the guaranties I have testified to, in that it would not carry
its rated load; it was rated to carry 50 K. W., and it would
not do it; the amount of water consumed by the turbine, the
steam was more than the guaranties on a new machine;
that was where the steam end fell out; it would not carry
its rated load, and took more steam to carry any load than
the guaranty said it should,—that is, both condensing and
noncondensing; on the electrical end, the generator fell
down, in that the commutator would run hot and the ma-
chine would spark; it would run a ribbon of fire all around
the commutator; the governor would not operate proper-

ly without having a special oiling device arranged for it;
it would get hot and stick."

We are unable to concur in appellee's interpretation of
its contract.   The machine is shown by the evidence to have
been in possession of a purchaser for nearly two years be-
fore it was delivered to defendant.   A witness called by
plaintiff testified, in rebuttal, that the machine had not
been operated to exceed five months; but the jury, under the
testimony quoted above, which was corroborated to some
extent by other witnesses, might have found that the ma-
chine had been used for a much longer period.   Whether
plaintiff's representation that the machine had not been
used to exceed six months is treated as a separate warran-
ty or not, when taken in connection with the further rep-
resentation that it was in first-class condition, and would
carry the same warranty as a new machine, it must be given
some controlling importance.   The character of the turbine
as a secondhand machine would naturally suggest to a pros-
pective purchaser an inquiry as to its condition.   Without an
opportunity for inspection, plaintiff could hardly have ex-
pected defendant to have understood its representations
that the machine had not been used to exceed six months,
and was in first-class condition, as the mere expression of
an opinion.   It is much more probable that plaintiff intend-
ed thereby to assure the defendant that it was not an old,
worn-out turbine, in a bad state of repair, without substan-
tial value, but that it was, in truth, in good repair and, in
fact, in "first-class condition,"—and not mere "dealer's
talk."   This is further emphasized by the statement in the
letter that it would carry the same guaranty as a new ma-
chine.

Counsel for appellee practically concede, in argument,
that it was the intention of plaintiff to sell the machine with
the same guaranty as a new one.   The restricted meaning
sought to be placed upon the guaranty quoted, by counsel

for appellee, does not meet with our approval. By express language therein, "the company guarantees the apparatus and equipment described herein to be of full capacity, efficiency, and other qualifications stated in the attached specifications." The option extended to defendant to return defective parts and have the same replaced with new must have related to minor parts of the machine, and not to its capacity and efficiency. It is conceded that defendant did not report defects in workmanship and material, nor are these the principal matters complained of. As indicated, defendant testified that the machine could not be operated at its rated capacity; that the machine became hot, and ran a ribbon of fire around the commutator; that the governor would get hot and stick. This was directly contrary to the following specification, referred to in the guaranty quoted above:

"Operation.—The generator will operate without appreciable sparking at any load from no load to 25 per cent overload without shifting the brushes. Special regulating poles and winding will be used to insure reliable operation and good commutation under varying loads at the high speed specified. It will carry its full rated load continuously for 24 hours, with temperature rise not to exceed 40 degrees centigrade on any part except commutator, and 45 degrees centigrade on the commutator. Immediately following full load test, it will carry an overload of 25 per cent for 2 hours with a rise in temperature not to exceed 50 degrees centigrade on any part except commutator, and 55 degrees centigrade on the commutator; and an overload of 50 per cent momentarily without injurious heating, or flashing over at the commutator."

Beeson testified, with reference to the specifications set out in the catalogue, as follows:

"The machine we sold him would carry the same general warranty shown in the specifications, irrespective as to

whether or not it was an economy type or the standard or old type. I do not know whether or not the machine I sold and delivered to Mr. Gaynor measures up to these specifications or guaranties; we have never made any investigation or tried to find out, except through correspondence with the engineer who formerly operated the machine, and whose deposition was taken in this case."

We therefore assume that the specifications set out in the catalogue are to be treated as a part of the guaranties accompanying the sale of a new machine. It is, therefore, our conclusion that plaintiff warranted the machine in question to be in first-class condition for use; that same had not been used longer than stated in plaintiff's letter of October 28th; and that it was equal in capacity and efficiency to a new machine, in that it was as good in all practical respects as a new machine; and that, in so far as plaintiff warranted a new machine, the one in question was equal thereto.

Counsel for appellee lay some stress upon their claim that plaintiff did not know the use or purpose for which defendant desired the machine, and, therefore, the specifications contained in the catalogue are not applicable, and the machine was not warranted to carry any particular load, or to do the specific work for which the same was purchased. The machine was, however, of a particular type described in the catalogue, guaranteed to possess certain capacity and efficiency; and, while the successful operation of the machine may depend, to some extent, upon the manner of its installation, the use made of it, and the skill with which it is handled, it is obvious that plaintiff meant more by the statement in its letter that it would carry the same guaranty as a new machine, than that defective parts would, upon notice, be replaced. We are, therefore, of the opinion that the evidence established a warranty, and such a breach thereof as entitled defendant to have his counterclaim submitted to the jury.

II.   But it is contended that the evidence fails to show that defendant relied upon the alleged warranty, or that same constituted any part of the consideration of the con-

2. SALES: reli-
ance on war-
ranty.

tract.   It was not necessary for plaintiff to show by direct evidence that he relied there-on.   It is sufficient if, from all the facts and circumstances shown, reliance thereon fairly appears. Where the warranty is a part of the contract of sale and a part of the consideration of the purchase price, reliance up-on the warranty will be presumed.   *Mitchell v. Pinckney,* 127 Iowa 696.

III.   The evidence, without conflict, shows that the machine in question is not an Economy type machine; but the same guaranty accompanied both types of new machines. It is claimed that the evidence wholly fails to show damages upon the part of the defendant.   Evidence was offered, tending to show that the machine was of little value.   One witness testified that its value would not exceed $125.   The question was one of fact for the jury; and it cannot be said, as a matter of law, that no damages were shown.

From what is said above, it follows that the motion to direct a verdict in favor of the plaintiff should have been overruled, and the issues tendered by defendant's counter-claim, except that of rescission, submitted to the jury.   The judgment of the court below is, therefore,—*Reversed.*

LADD, C. J., EVANS and SALINGER, JJ., concur.