ORLIN V. BALES et ux., appellants, v. WALTER J. MASSEY, dba MASSEY PIANO COMPANY, appellee.

No. 47603.

(Reported in 43 N.W.2d 671)

August 1, 1950.

Rehearing Denied October 23, 1950.

Paul W. Walters and Robert R. Jordan, both of Des Moines, for appellants.

J. R. McManus, of Des Moines, for appellee.

WENNERSTRUM, J.—Plaintiffs' action seeks to establish rescission of the sale by the defendant to plaintiffs of a grand piano and to recover the sum of $1320.95 which it is claimed represents the purchase price paid by them. They maintain there was an express warranty that the piano purchased was new. The defendant-company in its answer admitted that the piano sold the plaintiffs was a rebuilt piano but denied any warranty as claimed by the plaintiffs. Upon the submission of the plaintiffs' evidence the trial court directed a verdict for the defendant and thereafter overruled plaintiffs' motion for a new trial. They have appealed.

The appellants are husband and wife and reside in Des Moines, Iowa. In October 1946 Dorothy Bales, one of the appellants, acting for herself and husband purchased a new Kimball spinet piano from the defendant paying $734.40 for it. Approximately three months after this purchase the appellants decided that a larger piano would add to the attractiveness of their large living room. Mrs. Bales went to the appellee's place of business and conferred with a salesman relative to the purchase of a baby grand piano. She testified that in her negotiations for the purchase of the second piano she told the salesman for the appellee that she wanted a new one. At the conclusion of the negotiations a Story-Clark grand piano was selected by her for the agreed purchase price of $1320.95. Credit of $734.40 was given on the transaction by the return of the spinet piano. This last purchase was made on January 7, 1947.

The appellants in their petition alleged, in substance, the facts as previously set forth and further therein stated that at the time of the negotiations for the purchase of the grand piano a representative of the appellee showed her a Story-Clark grand piano which was priced at $1295. It was alleged the salesman did not disclose that the grand piano was not a new one; that it was agreed that the piano would be sold for $1295 plus $25.95 sales tax or for a total of $1320.95 and that an allowance of $734.40 would be allowed for the return of the spinet piano; that

thereafter the spinet piano was returned to appellee and the appellants paid to appellee the difference due of $586.50 ($586.55).

In appellants' petition it is also alleged that it was not until about June 26, 1947, that it was learned the piano was not new but that it had been rebuilt and refinished in such a manner as to appear to be new. It was further alleged that they had informed appellee's representative that they wished to purchase a new piano and relied upon the representations and warranties made to them.

It was further pleaded that on July 9, 1947, they notified the appellee in writing of their election to rescind the sale and offered to return the piano and demanded the return of the purchase price. They asked judgment against the appellee for $1320.95 with interest and costs.

The defendant-appellee in his answer admitted that Dorothy Bales, one of the appellants, purchased a Story-Clark grand piano for the sum mentioned in the petition, that credit was given for the return of the spinet piano and the difference of $586.50 ($586.55) was paid by appellants. It is alleged that Mrs. Bales was told that the grand piano was not a new one at the time of its purchase and that a full disclosure was made to her.

It is further alleged in the answer that on or about the date mentioned in the petition the appellants sent a letter wherein they attempted to rescind the transaction. The appellee also pleaded that it was a "new piano which had been refinished and rebuilt." It was further therein stated that appellants were informed at the time of the purchase that "the same guarantee went with the sale of the used piano which they were purchasing as was made with a new piano * * *." The answer alleged that the piano sold was represented to be a used one.

It is the claim of the appellants in their printed and oral arguments before this court that they had pleaded an oral contract of purchase. This fact is not specifically stated in their amended and substituted petition but perhaps may be inferred inasmuch as no statement was made whether the contract was oral or written. This fact is not too material, as will be hereinafter noted.

1088

During the course of the submission of the appellants' testimony evidence was introduced to the effect that the piano was not a new one and that it had been built for over twenty years. At the time of the cross-examination of Dorothy Bales the appellee submitted to her a conditional sales agreement signed only by Mrs. O. V. Bales (Dorothy Bales), which is, in part, as follows:

"W. J. MASSEY PIANO COMPANY is not responsible for any agreement or promise other than written or printed on the face of this agreement. $1295.00 [Place] Des Moines, Iowa [Date] Jan. 7, 1947 FOR VALUE RECEIVED, I, or we, promise to pay to the order of W. J. MASSEY PIANO COMPANY, Twelve Hundred Ninety-five & 00/100 Dollars at its office in Des Moines, Iowa, in the following manner: $724.00 allowed by Kimball Spinett, $71.00 cash and then $500.00 Feb. 7, 1947.........together with an accommodation charge of $..... per month, payable monthly.

"The consideration of this contract is the delivery by W. J. MASSEY PIANO COMPANY to me of MAKE...Story-Clark grand ....STYLE....Used....., No....... receipt of which is hereby acknowledged, upon the following conditions, to-wit: That the title to said instrument shall not pass from W. J. MASSEY PIANO COMPANY until all the above specified payments and interest have been paid, together with any other amounts herein provided for. The buyer herein specifically agrees (1) that in the event of his failure to make any of the above payments when due or of any damage to said instrument after delivery, or its sale, incumbrance, abandonment or removal from his residence or from his general use in Des Moines....County....Polk.... and State of Iowa without the written consent of the said Company, or (2). in case the said Company deems the purchaser's security insufficient, the Company may do either of the following things, either severally or concurrently to-wit: [provisions set out] * * *. This agreement shall not be binding on said W. J. MASSEY PIANO COMPANY, until accepted and approved by them. Signed in the presence of F. P. McCusker. Mrs. O. V. Bales [Signature] 1439 Osceola."

Mrs. Bales in her testimony stated the description of the piano purchased was not on the instrument at the time she signed it. There was no pleading on the part of either the appellants or appellee relative to this conditional sales agreement or concerning any alteration of the instrument signed. No amended pleadings were filed by either party relative to this sales agreement during the course of the trial. However, most of the cross-examination of Mrs. Bales and her redirect examination pertained to the written conditional sales agreement signed by her and its claimed alteration. In connection with the redirect examination of this witness and the effort to show that the instrument in question had been varied after she signed it and that there were misrepresentations made at the time of the sale, appellants' counsel offered in evidence the written purchase agreement. Appellee then joined in the offer.

As alleged in the petition the evidence shows that on July 9, 1947, the appellants addressed a communication by registered mail to the appellee wherein reference was made to the purchase of the grand piano and that there had been representations made by a salesman that the piano sold the appellants was a new one. This communication further advised the appellee that on or about June 26, 1947, they learned for the first time that the piano was not a new one. It was therein further stated that they were dissatisfied with the transaction as made in that they had bargained for a new piano and that by reason of these facts they were, by the communication sent the appellee, rescinding the sale and were holding the piano subject to appellee's order. The appellants offered to deliver the piano to the appellee in return for the purchase price of $1320.90 cash.

At the conclusion of all the evidence, there was a motion to strike the testimony of Mrs. Bales for the reason that the testimony given by her concerning her conversation with the salesman was incompetent in that it sought to vary the terms of the instrument signed by the witness and was in the nature of prior negotiations which were merged in the written contract. This motion to strike the witness's testimony was sustained. Thereafter, as previously stated, the trial court, at the conclusion of appellants' evidence, directed a verdict for the appellee.

■ I. It is immaterial whether appellants pleaded an oral or written contract. It is apparent that there was a written conditional sales agreement signed by Mrs. Bales. Appellants in their petition alleged that there were misrepresentations made in connection with the sale of the grand piano. This allegation would be applicable to the conditional sales agreement.

In the American Law Institute Restatement on Restitution, section 8, page 32, it is stated:

"(1) 'Fraud' in the Restatement of this Subject, unless accompanied by qualifying words, means (a) misrepresentation known to be such * * * or (b) concealment, or (c) non-disclosure, where it is not privileged, by any person intending or expecting thereby to cause a mistake by another to exist or to continue, in order to induce the latter to enter into or refrain from entering into a transaction.

"(2) A misrepresentation is material if it would be likely to affect the conduct of a reasonable man with reference to the transaction * * *."

■ In the instant case it is alleged, and there was testimony to support such allegation, that the representative of the appellee concealed the true facts as to the character of the piano. Fraud may consist of concealment. Bogle v. Goldsworthy, 202 Iowa 764, 766, 211 N.W. 257. As to the right of one who has been induced by fraud to enter into a contract to rescind it see 17 C. J. S., Contracts, section 418a(1), page 902.

■ II. Parol evidence is admissible to prove fraud. The admission of evidence for this purpose is not in conflict with the parol-evidence rule which renders such evidence inadmissible to contradict or vary the terms of a written contract. 24 Am. Jur., Fraud and Deceit, section 267, pages 102, 103.

In Bonewell & Co. v. Jacobson, 130 Iowa 170, 172, 173, 106 N.W. 614, 615, 5 L. R. A., N. S., 436, in commenting on a situation somewhat applicable to the instant case this court stated:

"We do not understand that there is any rule of law precluding the defendant, in an action on a written contract, from pleading and proving fraudulent representations of the other party on which he has relied to his prejudice as inducement for the making of the contract sued on. This is the ordinary defense

of fraud, which may be interposed in an action at law by way of defense to recovery on a written contract. It is perhaps true that by a stipulation in a written contract collateral agreements or warranties attempted to be made by agents may be prevented from becoming portions of the contract between the parties, but no such stipulations can, as we understand it, prevent the interposition of the defense of fraud which has induced the making of the contract."

Similar holdings are: Hinkley v. Sac Oil & Pipe Line Co., 132 Iowa 396, 407, 107 N.W. 629, 119 Am. St. Rep. 564; McNight v. Parsons, 136 Iowa 390, 394, 113 N.W. 858, 22 L. R. A., N. S., 718, 125 Am. St. Rep. 265, 15 Ann. Cas. 665; Lavalleur v. Hahn, 152 Iowa 649, 662, 663, 132 N.W. 877, 39 L. R. A., N. S., 24. See also Hall v. Crow, 240 Iowa 81, 87, 34 N.W.2d 195, 199.

Under the pleadings and evidence submitted we have concluded that the trial court was in error in striking Mrs. Bales' testimony and in subsequently directing a verdict for appellee.

III. There is a further reason why the parol-evidence rule is not applicable in this case. The matter or manner of payment is not in controversy. Whether we consider the written instrument as a conditional sales agreement or a purchase agreement is really not of too much importance. The materiality of the writing introduced is because it would show that Mrs. Bales knew she was buying a *used* piano and was an apparent admission. From the standpoint of the appellants they apparently were endeavoring to show that it had been altered after it was signed. Under either circumstance it was evidentiary and collateral.

Under such circumstances it was not within the parol-evidence rule, for in the case of Cedar Rapids National Bank v. Carlson, 156 Iowa 343, 351, 136 N.W. 659, 662, we stated that the parol-evidence rule is inapplicable: "* * * where the instrument referred to in the testimony is not relied upon as the basis of the suit or defense, but is a mere collateral instrument of evidence." To the same effect are the holdings in the cited case therein noted as well as the statements in 32 C. J. S., Evidence, section 1011, page 1026; 20 Am. Jur., Evidence, sections 1106, 1107, pages 969–971.

IV. Inasmuch as there was a directed verdict, involving, in part, the question relative to the claimed warranties we can advisedly comment on the necessity of submitting such questions to a jury.

In the case of Thornton v. International Harv. Co., 192 Iowa 1121, 1125, 185 N.W. 989, 991, this court stated:

"In cases where representations are relied upon as constituting fraud and deceit, it is held that whether a representation is an expression of opinion or an affirmation is a question for the jury. Hetland v. Bilstad, 140 Iowa 411, 416; Creamer v. Stevens, 192 Iowa 920."

Relative to an express warranty or an implied warranty and the submission of such issues to a jury this court stated in Conkling v. Standard Oil Co., 138 Iowa 596, 605, 116 N.W. 822, 826:

"The defendant had denied in pleading and evidence that any express warranty had been made, and the issue of implied warranty was in the case. If there was no sufficient evidence of an express warranty—and the jury should so determine—still plaintiff was entitled to have the issue of implied warranty considered; there being evidence upon which a finding of implied warranty could be made to rest. And we think there was such evidence."

We have concluded that under the pleadings and evidence the issue as to the claimed warranty should have been submitted to a jury. See First National Bank v. Dutcher, 128 Iowa 413, 416, 104 N.W. 497, 1 L. R. A., N. S., 142; Merkle-Hines Mach. Co. v. Gaynor, 185 Iowa 210, 217, 170 N.W. 381. Although the case of Risser v. Cox, 187 Iowa 990, 994, 174 N.W. 701, was tried as an equity action our statement therein made pertaining to an express warranty is applicable to the present case. The facts are quite similar.

V. The appellee maintains the claimed rescission was improper and ineffective because appellants asked the return of more than they were entitled to. It is suggested by appellee that appellants are entitled, if at all, to no more than the return of the spinet piano and the cash payment made. Perhaps appellants' claim was excessive. However, the appellee at no time

prior to time of trial made any objection to the claimed rescission but at all times resisted appellants' right to rescind. We do not feel appellee was entitled to a directed verdict on this ground.

Nor do we think the court could properly say as a matter of law that appellants waived their rescission by using the piano afterward. Whether their conduct constituted or resulted in such waiver was at most a question for the jury.

Under the facts and issues presented and for the reasons previously stated this cause must be and is reversed and remanded.—Reversed and remanded.

All JUSTICES concur.