INCORPORATED TOWN OF WAHPETON in Dickinson County, appellee, v. I. J. ROCKLIN, appellant.

No. 50865.

(Reported in 119 N.W.2d 880)

FEBRUARY 12, 1963.

Walter B. Bedell, of Spirit Lake, and Goldberg, Nymann & Probasco, of Sioux City, for appellant.

K. B. Welty, of Spirit Lake, and Bradshaw, Fowler, Proctor & Fairgrave, of Des Moines, for appellee.

THOMPSON, J.—Plaintiff's action for specific performance asks that the defendant be required to convey to it certain real estate described as Lot 17 of Block E of Lakewood Park, in Dickinson County. The defendant answered denying that plaintiff is entitled to the relief prayed. After a trial the court found all issues with the plaintiff and entered its decree and judgment ordering the defendant to execute a conveyance as asked in the petition. So we have this appeal.

The plaintiff, an incorporated town lying on or near the northern shore of West Okoboji Lake, in Dickinson County, bases its action upon a written agreement with the defendant, entered into on May 23, 1951. Prior to and at that time the defendant was the owner of Lots 15, 16 and 17 of Block E of Lakewood Park, all lying within the corporate limits of the plaintiff-town. A platted road, known as Lake Shore Drive, crossed the upper or southern end of Lot 17, then at the westerly side of that lot turned diagonally northwest across Lots 16 and 15 to a point 25 feet south of the north end of these lots, then turned straight west across the north 25 feet of Lot 15 to its west side and on across the lot or lots adjoining Lot 15 on the west. This road was not well improved, and apparently the public used all of Lots 15 and 16 instead of the platted road.

As a result of some prior negotiations the parties on May 23, 1951, entered into a written agreement. At this time the owners of Lots 8 to 17 inclusive, including of course the defendant, had constructed a permanent road across the north end of their lots, and the defendant had built what is described in the agreement as a "usable roadway" diagonally across Lot 17, from northwest to southeast, which connected with the existing Lake Shore

Drive at the southeast corner of Lot 17. This road across Lot 17 was about 13 to 15 feet wide as improved. Lake Shore Drive as then platted was at all points 25 feet wide. We attach hereto a plat of the lots and roads involved in this action.

The agreement, too long to permit incorporation in full in this opinion, provides in substance and so far as material to the issues involved:

That the defendant would forthwith properly execute a quitclaim deed to Lot 17 and deposit it with his attorney, A. H.

Baron of Sioux City, to be delivered to the plaintiff as thereinafter provided.

That the town would forthwith take steps to vacate that portion of Lake Shore Drive which crossed Lots 15 and 16, and upon completion of the vacation proceedings the town agreed to quitclaim "all of the area in said vacated portion of the street as it crosses these two lots, together with that portion of Lot 17 lying west and south of said newly constructed roadway not used for street purposes to I. J. Rocklin; this deed to be delivered to said I. J. Rocklin in exchange for the one deposited in escrow with his attorney as provided in paragraph 1."

It was also provided that the town would not convey any interest it might have in that portion of Lake Shore Drive in front of or to the south of Lot 17, and that the defendant was to be entitled to all riparian rights in front of that portion of Lot 17 which was to be quitclaimed to him under the terms set out in the preceding paragraph; that is, that portion of Lot 17 not used for road purposes.

The defendant promptly executed his quitclaim deed to Lot 17 and placed it with his attorney as stipulated. The town likewise proceeded to vacate that part of Lake Shore Drive which crossed Lots 15 and 16. However, when it executed the deed purporting to convey the part of these lots so vacated to the defendant it described it as "That area formerly embraced within and consisting of a portion of Lake Shore Drive in Block 'E' of the Plat of Lakewood Park as originally platted which extended diagonally across Lots 15 and 16 of said Block 'E', and which has heretofore been vacated by official action of the Town of Wahpeton under date of June ...., 1951, and only that portion thereof included in said vacated area."

I. This brings up the first question for our consideration. The agreement required the town not only to vacate all of that portion of the Drive which crossed Lots 15 and 16, but to convey it. The deed, however, as tendered, conveys only the diagonal portion of the Drive. A reference to the plat shows that the roadway first extended diagonally across the lots; but at a point near the easterly line of Lot 15 it turned straight across the north end of the lot and so continued to the west side thereof.

The word "diagonal" is so well understood that definition seems unnecessary; but Webster's Third New International Dictionary says it means "having a position, direction or extension inclined from the vertical".

The town thinks its tendered deed sufficiently complied with the agreement; but we believe a serious doubt might exist as to whether that part of the Drive which runs straight along the north end of Lot 15 is included. The vacation covered all of the Drive crossing the lots; but for some reason the deed did not follow the description of the agreement and the vacation, but covered only the diagonal portion.

■ ■ A suit for specific performance is not a matter of absolute right but is always addressed to the sound judicial discretion of the court. Levis v. Hammond, 251 Iowa 567, 576, 100 N.W.2d 638, 644, and citations; Dullard v. Schafer, 251 Iowa 274, 282, 283, 100 N.W.2d 422, 427, 428. The court will not decree specific performance when the circumstances of the case show it would be inequitable to do so. Vermeulen v. Meyer, 238 Iowa 1033, 1035, 29 N.W.2d 232, 233; Imperial Refineries Corp. v. Morrissey, 254 Iowa 934, 945, 119 N.W.2d 872, 878. And, while the chancellor who tries the case has a considerable discretion in granting or withholding the remedy, such discretion is not absolute. We have on occasion found that it should not have been exercised, and have reversed decrees granting performance. Darnall v. Day, 240 Iowa 665, 675, 37 N.W.2d 277, 283; Pazawich v. Johnson, 241 Iowa 10, 14, 39 N.W.2d 590, 592.

■ ■ The deed tendered by the plaintiff in supposed compliance with the agreement is at best of doubtful certainty. Common understanding and the dictionary definition agree that only the diagonal part of the Drive across Lots 16 and 15 is conveyed by it. It would be an injustice to compel the defendant to accept a doubtful title such as is tendered; and injustice is always a compelling reason for denying specific performance.

■ II. There are other and equally cogent reasons for refusing specific performance in the case before us. The agreement between the parties requires the plaintiff to reconvey to the defendant that part of Lot 17 not used for road purposes. This reconveyance was to be made at the same time the deed to the

vacated portion of Lots 15 and 16 was made; such are the terms of the contract. But it is evident the plaintiff, shortly after the execution of the written agreement, decided to claim all of Lot 17. On September 10, 1951, a motion was made and carried by the town council that "the entire Lot 17 being acquired from Mr. Rocklin be used for road purposes." On November 1, 1954, a request of defendant's attorney that he should have a part of Lot 17 was denied at a council meeting. Also the present action seeks to compel the defendant to convey the entire lot, and it is evident throughout that the plaintiff is claiming all of it.

The agreement quite clearly indicates that all parties at the time of its execution considered there would be a substantial part of Lot 17 lying southwesterly of the road contemplated which would not be used for road purposes and which would be reconveyed to the defendant. Paragraph 2 of the contract says the town will quitclaim all of the area in the vacated portion of Lake Shore Drive as it crosses Lots 16 and 15 "together with that portion of Lot 17 lying west and south of said newly constructed roadway not used for street purposes" to the defendant. Paragraph 3 in part agrees "It is * * * understood that Mr. Rocklin shall be entitled to all riparian rights in front of that portion of Lot 17 which is to be quitclaimed to him as herein provided."

The agreement is not clear as to how much of Lot 17 was to be used for road purposes and how much was to be quitclaimed to the defendant; but certainly it definitely appears that it was expected there would be some part of it to which he would be entitled. At best, the agreement is uncertain on this point; and uncertainty is a compelling reason for refusing specific performance. In Hunter Investment, Inc., v. Divine Engineering, Inc., 248 Iowa 1109, 1121, 83 N.W.2d 921, 927, we quoted with approval from Lockie v. Baker, 206 Iowa 21, 24, 218 N.W. 483, 484: "Contracts, to be specifically enforced, must be so certain and definite in their terms as to leave nothing to conjecture, or to be supplied by the court." In Down v. Coffie, 235 Iowa 152, 157, 158, 15 N.W.2d 216, 219, we said: "It is a familiar rule that contracts, to be specifically enforced, must be so certain and definite in their terms as to leave nothing to conjecture". The same

principle is stated and followed in Donovan v. Murphy, 203 Iowa 214, 215, 212 N.W. 466, and in Marti v. Ludeking, 193 Iowa 500, 504, 185 N.W. 476, 478, this language is used: "If there is any uncertainty in the terms of the * * * agreement, * * * or if it is manifest that it is incomplete, and that essential matters have not been agreed upon, specific performance will be denied." The uncertainty, the missing meeting of the minds, is too apparent here to merit further discussion.

III. Another well settled principle is that specific performance will not be granted unless the party seeking it has shown the utmost good faith in carrying out his part of the contract. In Findley v. Koch, 126 Iowa 131, 135, 101 N.W. 766, 768, we laid down this rule: "A court of equity, in the matter of specifically enforcing a contract to convey, will insist on a showing of the utmost good faith on the part of the purchaser * * *." In Schneider v. Schneider, 125 Iowa 1, 16, 98 N.W. 159, 164, is this language: "Any trace of unfairness or fraud will render specific performance impossible."

The application of this rule to the case at bar becomes apparent upon a study of the record. We have pointed out above that the agreement clearly indicates that all parties thought there would be a tract lying southwest of the then constructed roadway, in Lot 17, which would not be used for street purposes. But within a few months the plaintiff, through its town council, declared its intention to claim the entire lot and to reconvey no part of it. The record does not show that the entire lot was then being used for street purposes; and as defendant's counsel point out, we must judge the "use for street purposes" as of that time rather than the time of the trial, because the agreement so indicates. The roadway constructed by the defendant across Lot 17 was no more than 15 feet wide, and ran diagonally from southeast to northwest. Perhaps the plaintiff might have been justified in considering that a somewhat wider road was needed; but in view of the fact that Lake Shore Drive on either side of Lot 17 was no more than 25 feet wide, and there was no roadway in the near vicinity of a greater width, the attempt to appropriate the entire lot smacks sufficiently of unfairness to compel refusal of specific performance. It also points up the

uncertainty in the provisions of the agreement referred to in the preceding division, and the reason for refusing specific performance on that ground.

Pictures taken near the time of the trial show that the entire lot is not used for a roadway, at least in the generally accepted sense of the traveled portion. Testimony of town officials shows it is used for parking cars by people who swim in the adjoining lake and go there to fish. Adolph Vestergaard, a town councilman, said: "The whole drive has always been a very narrow road. * * * You could make it fifty feet wide if you wanted to. I do not know how wide the graveled portion was. * * * The right of way of the road as it proceeded in an easterly direction after it crossed Lot 17 is supposed to be twenty-five feet. I wouldn't say the actual width. I don't suppose it is any wider than that."

There is also evidence of serious consideration of removing Lake Shore Drive entirely from Lot 17 and running it along the north end of that lot and the other lots to the east and west. But the council refused to go ahead with a determination of this matter until its litigation with the defendant had been settled. There arises a strong conjecture that if the plaintiff is awarded Lot 17 further consideration will be given to the entire abandonment of the Drive across it and the entire roadway be shifted to the north end of the lot and the adjacent ones with Lot 17 being made into a park or recreation area. Since we think the plaintiff's attitude is sufficiently demonstrated by the other matters set forth above, we do not discuss this point further.

The town's attempt to escape its agreement to reconvey such portion of Lot 17 as was not used for street purposes we think shows unfairness on its part precluding it from compelling specific performance. If its position is sound, it would have the right to say that Lake Shore Drive across Lot 17 is to be 50 feet wide, although at either end it would immediately narrow to 25 feet. It seems probable that the parties must have contemplated no greater width than this across Lot 17; but in any event they left their contract uncertain and the court will not remake it for them in order to grant specific performance.

The plaintiff points to some preliminary negotiations be-

tween the parties which it thinks show what was intended. It is sufficient to say here that we must measure their rights by their contract. In fact, the failure to include the substance of some of the negotiations in the contract rather indicates a failure to agree upon them.

Other propositions assigned are either not argued or are not necessary to our decision here. The defendant prayed for no affirmative relief, except for payment of costs and so must be content with a holding that the plaintiff is not entitled to specific performance, the only issue raised by his answer. Costs in both courts will be taxed against the plaintiff.—Reversed.

All JUSTICES concur.