J. ROBERT McCARTY, appellee, v. W. P. JEFFERS, appellant.

No. 52784.

(Reported in 154 N.W.2d 718)

DECEMBER 12, 1967.

George L. Norman, of Keokuk, for appellant.

Johnson, Phelan & Tucker, of Fort Madison, for appellee.

BECKER, J.—This is an action for specific performance. Plaintiff and his father-in-law, the defendant, signed a contract for the exchange of certain real estate. Specific performance was decreed by the trial court. We disagree.

The two parcels of land involved are referred to in the record as the home place and the Meister place.

Defendant Jeffers acquired the home place from his mother in 1938 and farmed it for a few years. Though larger when acquired, this tract consisted of about 60 acres at the times material here. The property had a home and buildings on it. Plaintiff and his family, at defendant's request, occupied and worked this farm in 1942. They remained until the latter part of May 1966.

Some conveyances occurred between the parties prior to 1947 but these actions do not affect the result here. In that year the parties had an opportunity to buy a 225-acre farm and did so. This property was known as the Meister place. It had no buildings. Title to both places was then placed in joint tenancy in the names of plaintiff McCarty *and his wife,* and defendant Jeffers *and his wife.* The validity of the precise form of ownership is not in question here. All four persons had record title ownership.

Beginning in 1949 the two families farmed the home place and the Meister place as a partnership, sharing equally the income and expenses. Both families lived in the house on the home place, which was divided to make separate living quarters.

The partnership farming arrangement continued, but with friction, until 1961. In that year the friction had become serious enough to cause the parties to attempt to change the situation.

On May 24, 1961, plaintiff and defendant talked about division of the farms and termination of the joint farming venture. Although both Mrs. McCarty and Mrs. Jeffers were present, their role in the discussion appears to have been more passive than active. All four witnesses agree the McCartys were to get the Meister place and the Jeffers would get the home place. Defendant stated the agreed additional com-

pensation to be paid by McCarty was $10,000 and this was changed to $9400 after they left the women and before this part of the agreement was reduced to writing. Mrs. Jeffers testified her understanding was the additional cash was to be $12,000 and she would not have agreed to an exchange for less. Plaintiff did not state his memory of the amount agreed on at the oral discussion.

Defendant testified that as a part of this discussion it was agreed the personal property owned together by the parties would be sold and McCarty would arrange the auction. McCarty denies this and states Jeffers was to make any such arrangements.

On the same date McCarty and Jeffers went to the offices of a Keokuk attorney where an agreement was reduced to writing and signed by the two men. It made no mention of a contemplated sale of personal property. Neither of the wives was made party to the written contract; neither was present nor did either ever sign the agreement. Mrs. Jeffers states she had never given her husband authority to act for her. She did agree she regularly did what her husband requested in such matters.

The written agreement provided for Jeffers to have the home place and McCarty to have the Meister place. McCarty was to pay Jeffers $9400 within 30 days. The provision for the termination of the joint farming venture was that any income or expense "incurred as a result of selling of corn now on all of said property shall be shared equally." Each grantee was to have the growing crops then on the tract to be acquired. No mention was made of possession date.

McCarty contacted the bank for financing. He received a commitment for a $15,000 loan, $9400 of which was to be used in the real-estate trade. He did not arrange for a farm sale of the personal property owned by the partnership. He wanted to keep his half without sale as this would be cheaper than having a sale and buying it back. Defendant insists plaintiff was to make sale arrangements and it was the failure to do so which caused defendant to refuse to complete the trade. Plaintiff states he did talk about the auctioneer to be hired but

denies he agreed to a sale at any specific time or as a condition to completion of the contract.

Plaintiff testified that on the 30th day after execution of the written contract he stayed home to pay defendant, but the parties apparently did not discuss the matter (though they lived in the same house). The sale was not completed.

Defendant contends plaintiff never did tender performance. Plaintiff states he made several offers of performance.

About six weeks after the date for completion of the contract, both parties and their wives borrowed $15,000 from the same bank on a joint loan using the jointly owned real property as collateral, paid off their respective obligations and continued farming in partnership for the next four or five years. Of course plaintiff's solo loan was never processed. The papers remained with the bank, along with plaintiff's copy of the contract until 1966 when plaintiff got the contract from the banker, consulted a lawyer, moved out of the house and started this action. Plaintiff said he had tried several times during the interim to get defendant to change his mind. Defendant testified no such efforts were made and the first time the matter was again discussed was in the spring of 1966 just before suit was filed.

■ I. Action for specific performance of a contract is cognizable in equity. Baker v. Fowler, 215 Iowa 1157, 247 N.W. 676; Peddicord v. Peddicord, 242 Iowa 555, 47 N.W.2d 264.

Thus the case is triable de novo on appeal. We give weight to the trial court's fact findings but are not bound by them. Iowa Rules of Civil Procedure, 344f(7). We do not agree this is a proper case in which to grant the extraordinary remedy of specific performance.

■ The general rules governing consideration of this case with ample citation of authority are found in Incorporated Town of Wahpeton v. Rocklin, 254 Iowa 948, 953, 119 N.W.2d 880: "A suit for specific performance is not a matter of absolute right but is always addressed to the sound judicial discretion of the court. * * * The court will not decree specific performance when the circumstances of the case show it would

be inequitable to do so. * * * And, while the chancellor who tries the case has a considerable discretion in granting or withholding the remedy, such discretion is not absolute. We have on occasion found that it should not have been exercised, and have reversed decrees granting performance. * * *."

The first proposition upon which defendant relies for reversal is the contract was rescinded and abandoned by mutual agreement. He cites Griffey v. Lubben, 196 Iowa 465, 468, 469, 193 N.W. 410: "Specific performance rests, in a large degree, within the discretion of the court; and if the proof offered of a change in or abandonment of the original contract raises a serious doubt in the mind of the court as to the equity asserted by the plaintiff, the relief will be denied, and the vendee will be remitted to his remedy at law, if any he has."

He also cites Herpolsheimer v. Christopher, 76 Neb. 352, 354, 107 N.W. 382, 9 L.R.A., N.S., 1127, 14 Ann. Cas. 399: "The rule is that a contract will be treated as abandoned where the acts of one party, inconsistent with its existence, are acquiesced in by the other."

In this case McCarty had all of the papers prepared at the bank so that he could borrow sufficient funds to complete the contract. Yet within six weeks after the time for performance of the contract had expired he joined defendant in a joint loan from the same bank, using the same property as collateral, placed a mortgage on the property and continued to work the farm as before for a period of four years.

The contract also provided the grantee of each piece of property would be entitled to *all of the growing crops* on the real estate to be conveyed. This would mean plaintiff was entitled to all crops on the 225-acre tract while defendant was entitled to all crops on the 60-acre tract. Plaintiff says each year after the contract was signed he proposed the crops be divided on that basis and each year defendant refused. Although defendant denies this, both agree the crops (or the income therefrom), for both tracts operated as a whole, were divided each year on a fifty-fifty share basis. The parties made and filed partnership income tax returns at least until 1962, continued the partnership farming as to all crops to 1964 and

were still in partnership as to wheat, pasture and cattle at time of trial. The farm was treated as a unit for purposes of participating in government programs to date of trial. We find such action to be inconsistent with continued reliance on the rights created by the written contract.

The trial court found plaintiff did not acquiesce in the wrongdoing of defendant. "There was merely an acceptance on the part of McCarty of a situation which was created by the wrongdoer which made it necessary for him to enter into a mortgage with the defendant to the bank for the payment of the bin notes and for certain working capital" (for the two farm tracts). We cannot agree. Conceding, arguendo, Jeffers' acts were wrongful (an assertion denied by Jeffers because of McCarty's failure to arrange a sale of the personalty), the money borrowed was for the purpose of continuing partnership operation. Neither party had to remain in the partnership for another four years. The acceptance of partnership division of crops contrary to the terms of the written contract, negotiation of a new loan, continued occupancy of the home by the McCartys, signing numerous commitments to the federal government for various crop participation programs, all indicate a mutual abandonment of the contract.

II. Defendant relies on three further propositions for reversal: (1) a party is not entitled to specific performance where he has placed himself in a position where he is not ready, willing and able to perform (by signing the joint mortgage); (2) specific performance would not lie when the property is held by both husband and wife and only the husband signed, and (3) plaintiff was guilty of laches. Each of these propositions is supported by authority but efficacy of the authority in each case is largely dependent on the factual circumstances of the cited case.

We need not consider these authorities or the authorities cited in opposition thereto. We consider our holding in Division I to be determinative.—Reversed.

All JUSTICES concur.