**HETHERINGTON LETTER COMPANY, Appellant Cross-Appellee,**

**v.**

**O. F. PAULSON CONSTRUCTION COMPANY, Appellee Cross-Appellant,**

**v.**

**MERCHANT'S NATIONAL BANK OF CEDAR RAPIDS, Iowa, Cross-Appellee.**

**No. 52815.**

Supreme Court of Iowa.

Oct. 14, 1969.

Rehearing Denied Dec. 8, 1969.

J. D. Randall and D. G. Bleakley, Cedar Rapids, for appellant, cross-appellee, Hetherington Letter Co., and cross-appellee Merchant's Nat. Bank of Cedar Rapids, Iowa.

Remley & Heiserman, Anamosa, for appellee, cross-appellant.

RAWLINGS, Justice.

By action in equity plaintiff sought specific performance of a construction con-

tract. Defendant cross-petitioned seeking foreclosure of its mechanic's lien. Trial to the court resulted in a decree which denied the specific performance sought by plaintiff and granted foreclosure of the lien subject to a deduction. Both parties appeal. We affirm in part, modify in part.

Hetherington Letter Company, plaintiff-appellant, cross-appellee, and O. F. Paulson Construction Company, defendant-appellee, cross-appellant, are separate corporate entities.

In the interest of brevity we shall, for purpose of this review, disregard Merchant's National Bank of Cedar Rapids, Iowa, mortgagee-intervenor, treating Hetherington Letter Company, plaintiff, and O. F. Paulson Construction Company, defendant, as the parties hereto.

Early in 1958 John D. Randall, an officer of Hetherington Company, and T. F. Paulson, vice-president of Paulson Company, entered into preliminary negotiations regarding partial reconstruction of a building owned by Hetherington Company in Cedar Rapids.

Contemporaneously Mr. Randall and T. F. Paulson discussed plaintiff's need for the services of an architect. The latter suggested, he being properly licensed and qualified, could so serve for a charge of $5 an hour, plus social security and pay roll taxes. Plaintiff corporation and T. F. Paulson, individually, thereafter proceeded under that oral arrangement.

September 22, 1958, plaintiff and defendant entered into a written contract (Exhibit 3), supplemented by "General Conditions" (Exhibit 4), under which defendant agreed to provide all labor and materials necessary for "repair and replacement" of the westerly 60 feet of the Hetherington structure.

Two letters were also submitted by defendant to plaintiff in accord with its request. The first (Exhibit 5), dated September 1, 1958, set forth in some detail the estimated prices for specified portions of the project. The other communication (Exhibit 6), bearing date September 15, 1958, designated the specific work to be performed. Exhibits 5 and 6 disclose the final total estimated cost was $55,600. Other relevant facts will be later considered.

Plaintiff here claims defendant failed to make the basement floodproof or to complete installation of a door leading to the second floor and finish a stairway wall.

Defendant takes the position it substantially performed pursuant to the contract, supplied extra labor and material, and should have benefit of the relief it requests.

Trial court found the balance owing to Paulson Company, on the contract, was $5,331.60, plus $16,025.33 for extras, or a total of $21,356.93, less $7,455.84 for failure to floodproof the basement, leaving a net of $13,901.09, as to which defendant's mechanic's lien was ordered established and enforced.

Eight "errors" are assigned by plaintiff, deemed by us to be propositions [rule 344 (a) (3), Rules of Civil Procedure] in support of a reversal. Its argument, however, is limited to alleged error by trial court in these four respects: (1) holding plaintiff liable to defendant for more than $5,331.60, balance due on contract price, by reason of fraud on the part of T. F. Paulson, the architect; (2) application of an erroneous standard for measurement of damages to which plaintiff is entitled because of defendant's failure to floodproof the basement; (3) finding plaintiff liable to defendant for extra labor and material based upon waiver of written contract terms; and (4) holding plaintiff not entitled to specific performance.

On the other hand defendant urges a reversal upon the premise trial court erroneously held, defendant agreed to construct a floodproof basement, and resultantly deducted $7,455.84 from the amount found owing it from plaintiff.

To some degree these propositions unavoidably overlap. To that extent they will be by us accordingly considered.

I. Regarding plaintiff's demand for specific performance, this court said in McCarty v. Jeffers, Iowa, 154 N.W.2d 718, 721: "The general rules governing consideration of this case with ample citation of authority are found in Incorporated Town of Wahpeton, etc. v. Rocklin, 254 Iowa 948, 953, 119 N.W.2d 880, 883. 'A suit for specific performance is not a matter of absolute right but is always addressed to the sound judicial discretion of the court. * * * The court will not decree specific performance when the circumstances of the case show it would be inequitable to do so. * * * And, while the chancellor who tries the case has a considerable discretion in granting or withholding the remedy, such discretion is not absolute. We have on occasion found that it should not have been exercised, and have reversed decrees granting performance. * * *' "

II. Also, in Peterman v. Hardenbergh, 250 Iowa 931, 933, 97 N.W.2d 152, 153, is found this apt statement relative to mechanic's lien foreclosures: " * * * as we pointed out in Huffman v. Hill, [245 Iowa 935, 65 N.W.2d 205] a technical, exact and perfect performance is not required nor necessary. If the terms of the contract are established by a preponderance of the credible evidence, and there is shown a substantial performance of its terms, the builder is entitled to the contract price plus extras, less reasonable sums for small items not furnished and reasonable damages on account of slight defects in performance. Lautenbach v. Meredith, 240 Iowa 166, 172, 173, 35 N.W.2d 870, 874. This is particularly true in equity suits, which are somewhat more liberal than actions at law. Littell v. Webster County, 152 Iowa 206, 215, 131 N.W. 691, 132 N.W. 426; Hayes v. Ramsey, 205 Iowa 167, 169, 217 N.W. 808, 809." See also Sitzler v. Peck, Iowa, 162 N.W.2d 449, 451.

III. Plaintiff bases its right to specific performance largely, if not entirely, upon the testimony of Mr. Randall.

He testified, in part, to the effect defendant orally agreed to floodproof the basement but failed to do so.

At the outset we find nothing in the contract (Exhibits 3 and 4), or the letters (Exhibits 5 and 6), which refers to the matter of floodproofing. In course of trial Mr. Randall was permitted, over timely and proper objection, to give testimony regarding conversations on that subject between him and T. F. Paulson. This was apparently permitted by trial court because of the fraud alleged by plaintiff in connection with execution of the contract. See in this regard Lamasters v. Springer, 251 Iowa 69, 73, 99 N.W.2d 300, and Bales v. Massey, 241 Iowa 1084, 1090, 43 N.W.2d 671.

It is to us evident T. F. Paulson, individually, was the architect for plaintiff corporation. In fact we find in the record no evidence disclosing Paulson Company, a corporation, could legally serve in that capacity. See chapter 118, Code, 1966; 6 C.J.S. Architects § 5, page 296; 5 Am. Jur.2d, Architects, section 2, page 662; and Annos. 56 A.L.R.2d 726.

Finally on this matter, plaintiff's argument on appeal is directed not to fraudulent representations or conduct by Paulson Company, but entirely toward Paulson the architect. He is not a party to this action, and fraud, if any, on his part personally is not here involved.

Under these circumstances we accord no further consideration to the matter of fraud as an element in the case at bar. See in this regard rule 344(a) (4) (Third), R.C.P., and Quint-Cities Petroleum Co. v. Maas, 259 Iowa 122, 126, 143 N.W.2d 345.

IV. Article 2 of the contract (Exhibit 3) states: "The Owner, through the Architect, may from time to time, *by written instructions or drawings issued to the Contractor*, make changes in the above-named Drawings and Specifications, issue

additional instructions, require additional work or direct the omission of work previously ordered, and the provisions of this contract shall apply to all such changes, modifications and additions with the same effect as if they were embodied in the original Drawings and Specifications. Since the cost of all such changes is to merge in the final cost of the work, Articles 15 and 16 of the General Conditions of the Contract are annulled, unless elsewhere especially made applicable." (Emphasis supplied).

Trial court found this clause served to nullify Articles 15 and 16 of the "General Conditions" agreement (Exhibit 4). We find no basis upon which to hold otherwise.

Furthermore defendant, by its pleadings, alleged plaintiff waived the restrictive provisions of Article 2, supra, with respect to *all* extras supplied, and trial court agreed.

As stated in 13 Am.Jur.2d, Building and Construction Contracts, section 24, page 26: "Although stipulations in building or construction contracts requiring written orders or agreements for extra work or alterations are valid and binding so long as they remain in effect, it is equally well settled that they may be avoided by the parties to the contract. The courts have adopted various theories of avoidance, which may be classified as those of independent contract, modification or rescission, waiver, and estoppel.

"A waiver of such stipulation by the owner is the theory on which it is most frequently avoided. Among the acts or conduct amounting to waiver are the owner's knowledge of, agreement to, or acquiescence in such extra work, a course of dealing which repeatedly disregards such stipulation, and a promise to pay for extra work, orally requested by the owner and performed in reliance thereon." See also Berg v. Kucharo Construction Co., 237 Iowa 478, 488–489, 21 N.W.2d 561, 567 17A C.J.S. Contracts § 371(5)c, page 409; and Annos. 2 A.L.R.3d 620, 648.

On appeal plaintiff concedes, at least inferentially, the waiver rule applies as to some extras furnished by defendant for which it is entitled to receive $5,994.79, in addition to the contract balance owing.

We find, in any event, plaintiff unquestionably waived the contractual written instructions clause in connection with those extras supplied by defendant in this total amount.

There remains for determination the matter of defendant's claim for an additional $9,995.62 because of other extras supplied as to which the parties disagree. This problem compels a scrutiny of the factual situation as disclosed by the record.

It is first apparent, however, the only claim made by plaintiff is that as to these controverted items it did not waive the "written instructions or drawings" proviso set forth in Article 2 of the contract, quoted above. Stated otherwise no issue is presented relative to the supplying of extra labor and material on the project, the reasonable value thereof, or defendant's right to recover for same in event waiver is established.

Next, our review of the entire case at bar is de novo. This court has repeatedly held, however, the trial court is ordinarily in a better position than we to determine credibility of witnesses and resolve questions of fact. See rule 344(f) (7), R.C.P.; Carlson v. Maughmer, Iowa, 168 N.W.2d 802, 804; McCarty v. Jeffers, Iowa, 154 N.W.2d 718, 721; A and R Concrete and Cons. Co. v. Braklow, 251 Iowa 1067, 1071, 103 N.W.2d 89; and Peterman v. Hardenbergh, 250 Iowa 931, 933, 97 N.W.2d 152.

Mindful of the foregoing we find, from an examination of the record, no plausible

or persuasive basis upon which to disagree with trial court in holding plaintiff waived the requirements of Article 2, supra, regarding these project extras:

| | |
|---|---:|
| Removal of brick wall veneer | $ 315.21 |
| Extra floor slab in basement | 103.23 |
| Masonry wall | 1060.29 |
| Relocation, north-south basement wall | 3406.02 |
| Basement toilet | 718.79 |
| Separate basement power and light meters | 472.50 |
| Additional partitions | 1400.00 |
| Pella windows | 1101.99 |
| TOTAL | $ 8578.03 |

———◆———

Trial court correctly allowed defendant recovery for the foregoing specified extras.

But a careful inspection of the record also reveals no factual support for trial court's finding to the effect plaintiff waived the written instruction requirement of Article 2, supra, regarding the following defendant claimed extras:

| | |
|---|---:|
| Removing unstable brick veneer wall | $ 462.43 |
| Lowering footing | 115.48 |
| Construction of north-south foundation wall columns | 462.43 |
| Labor for cement steps and reinforcing rods | 37.35 |
| Reinforcing pads | 31.39 |
| Cement steps | 134.50 |
| Disconnection of waste pipes east of contract limits | 174.01 |
| TOTAL | $1417.59 |

———◆———

This finding is accorded more than minimal support by defendant's concession that in a few instances its authority was overstepped by supplying extras without plaintiff's knowledge, consent or acquiescence. Trial court erred to the extent it held otherwise regarding those items last above set forth.

■ V. Failure on the part of trial court to grant specific performance as requested by plaintiff is also challenged.

In this connection Hetherington Company contends, as aforesaid, Paulson Company did not fully perform under the contract because of failure to complete a door leading to the second floor, or finish a stairway wall.

Mr. Randall's testimony in that area is at best vague and uncertain. Conversely Mr. Paulson testified, work on the door was not done because it was an optional item under the contract, that Hetherington Company had never authorized installation of the door, and it has accordingly never been billed by Paulson Company. Apparently the witness Paulson alludes to the letter (Exhibit 6) which provides in material part: "If it is determined that you desire to maintain the present entrance location for the tenants on the second floor of the easterly part of the building and that it would be desirable to remove the steps at the sidewalk and mask the arched entrance area with porcelain metal and install a pair of aluminum doors and make that entrance attractive *add* the sum of $4,300.00." (Emphasis supplied)

As best we can determine the second floor door to which Mr. Randall refers was

an unexercised optional, not a required item under the contract, for which plaintiff has not been charged by defendant.

Furthermore this court said in Cota Plastering Co. v. Moore, 247 Iowa 972, 975, 77 N.W.2d 475, 476: " ' "Substantial performance," as defined by the cases, permits only such omissions or deviations from the contract as are inadvertent or unintentional, are not due to bad faith, do not impair the structure as a whole, are remediable without doing material damage to other parts of the building in tearing down and reconstructing, and may without injustice be compensated for by deductions from the contract price. So much is allowed in building contracts because of the hardship to the contractor if slight, unintentional deviations should bar his recovery.' "

It is to us evident plaintiff's showing relative to the stairway wall was not sufficient to warrant a grant of specific performance. No attempt was made to establish bad faith by defendant, to disclose it was other than a slight and insignificant omission, or that it impaired the structure as a whole. Moreover no evidence is before us by which to determine the cost of this stairway finishing work.

We find no abuse of discretion by trial court in denying plaintiff's demand for specific performance.

VI. In light of the foregoing, other propositions urged by plaintiff on appeal need not be considered.

This court now holds defendant is entitled to have its mechanic's lien established to secure payment of $5,331.60 balance due on the contract, plus $14,572.82 for extras, or a total of $19,904.42, and this case is remanded to trial court for entry of decree in accord herewith.

Costs on this appeal are taxed two-thirds to plaintiff, one-third to defendant.

Affirmed in part, modified in part, and remanded with instructions.

All Justices concur.